## SPLAWN vs. MARTIN.

The jurisdiction of the court, in a suit by attachment, as between the interpleaders, arises by virtue of the writ of attachment and a valid service thereof. (*Gibson et al. vs. Wilson et al.*, 5 *Ark.* 422.)

Where the transcript of the record of the Circuit Court, filed in this court, fails to show the issuance and legal service of such writ, this court would, for the purpose of affirmance, if there were no other error in the record, issue a special writ of *certiorari* to the clerk of the Circuit Court to certify such writ and service to this court. (15 *Ark.* 396; 13 *Ib.* 745.

An interpleader, in a suit by attachment, levied upon land and cotton, proved that the defendant, who was her son, had executed to her, a deed for the land, purporting to be for a valuable consideration, several months before the attachment issued, and possession of the land from the date of the deed; also that the cotton was the produce of the land and of the labor of her slaves, and was in her sole possession : HELD, That these facts, in the absence of any proof of fraud, render it clear that the title to the property was in the interpleader : that the mere fact of the indebtedness of the defendant to the plaintiff, at the time of the execution of the deed to the interpleader was no evidence of fraud ; nor was the fact that the defendant was the son of the interpleader.

It is the intent that makes a conveyance of property fraudulent as to creditors; and this intent must be participated in by both parties ; by the grantee as well as the grantor.

A party offering a deed, purporting to have been executed for a valuable consideration, as evidence of title, may prove the actual payment of the consideration, although such proof is cumulative of that *prima facie* established by the deed itself.

### Appeal from Bradley Circuit Court.

Hon. THEODORIC F. SORRELLS, Circuit Judge.

YELL, for the appellant.

WILLIAMS & WILLIAMS, for the appellee.

Mr. Justice HANLY delivered the opinion of the Court.

This was an action of assumpsit commenced by attachment, as it irregularly appears from the transcript, at the suit of the appellee against one John Splawn, on the common counts. An affidavit is appended to the declaration, such as is usual to warrant the issuance of an attachment, when the bond prescribed by the statute is filed. No bond, writ of attachment or return, is copied in the record sent up to this court. The appellant seems, however, to have appeared in the court below, and on leave granted, filed her interplea, by which she claims "the land and cotton attached," (specifying both) as her separate property. Issue was taken upon this plea. The defendant in the attachment suit, not being served with process, did not appear to the action at the first term after the suit was commenced. The transcript shows, that at the next term he appeared by attorney, but interposed no defence to the action. Neither judgment by *default* nor *nil dicet* is noted on the transcript as having been taken against the defendant, but at the term at which the appearance of the defendant was entered, as before stated, the following order of the court appears to have been entered, *to wit:* "It is ordered that the rights of the plaintiff and the interpleader, be submitted to a jury, and thereupon came a jury of good and lawful men, &c.,   *   *   *   *   * who being duly elected, empanneled and sworn, well and truly to try the issue joined between the said plaintiff, and said John Splawn, (defendant, with whom there was no issue pending,) and the issue between said plaintiff, and Elizabeth Splawn, (appellant) &." At the trial in the court below, in pursuance of the above order, evidence was introduced by the parties, substantially as follows:

The appellee proved by several witnesses, that the appellant was the mother of the defendant; that defendant was a married man; that he and his family, and the appellant, resided together at the time the debt sued for was contracted, and from thence up and until about the 1st August, 1852. He proved by the ori-

ginal papers that this cause was commenced on the 21st December, 1852.   A portion of the items of his demand was proved; and he furthermore proved, that the defendant was in the habit of dealing with him as a merchant, during the time within which his account purports to have been made.

Appellant showed title in herself to the lands attached, by producing, and reading to the jury, a deed duly executed, acknowledged and recorded, made by the defendant to her, dated 23d April, 1852, filed for record same day, and recorded on the 27th May, 1852.    he furthermore proved by oral testimony, that the cotton attached, though produced on the lands attached, was the produce of the labor of her slaves, and that she was the owner of several ; that the defendant was in the habit of attending to her business, and particularly the labor of her said slaves, and that defendant quit the county and moved to Texas about the 1st August, 1852, and had never been back to the county since.

.The deed from the defendant to the appellant, purports to have been made for the consideration of $1200 cash.   Appellant at the trial, proposed to prove by witnesses produced, that this consideration was absolutely paid by appellant to defendant, which was objected to, and the objection sustained by the court, and the appellant excepted.

The appellant further proved by oral testimony, that she had been in possession of the land attached ever since the date of the deed from the defendant, and had possession of the cotton at the time it was attached.

This was all the testimony given at the trial.   After the evidence was concluded, the appellee moved the court to instruct the jury, that "If they believed, from the evidence, that the sale of the land attached was made by the *defendant* to Elizabeth Splawn, appellant, with the intent to hinder, delay or defraud creditors, they will find the land and cotton to be subject to the attachment; provided, the jury believe, from the evidence, that the defendant was indebted to the plaintiff," appellee; which instruction was given, and the appellant excepted.

The appellant then moved the court to instruct the jury, among others, "that if they believed, from the evidence, that John Splawn, defendant, sold the land named in the attachment, to Elizabeth Splawn, appellant, by deed, *that deed* conveys the legal title of said land to her," which the court refused to give and for which appellant also excepted at the time.

The jury on the above state of facts, returned a verdict in damages in favor of the appellee, against the defendant, for $232 77, and found the property attached to have been the property of the defendant, and subject to the attachment.

The court proceeded to, and did render judgment in accordance with said verdict and gave judgment for the costs (under the statute) on the interplea against the appellant; who, thereupon, moved the court for a new trial, setting out informally and irregularly, the following grounds. 1*st* : Because the verdict was contrary to the evidence. 2*d* : Because the court erred in giving the instruction asked for by the appellee. 3*d* : Because the court erred in refusing the instruction asked for by appellant, and 4*th* : because the court refused to permit the appellant to prove the payment of the consideration expressed in the deed, to the defendant. All the evidence, as above, was set out in the appellant's motion for a new trial. On consideration of which the motion for a new trial was overruled, and the appellant excepted, setting out therein his motion, and the facts aforesaid. The appellant filed the usual affidavit, and prayed an appeal from the judgment in this behalf rendered against her, which was granted by the court.

Several errors are assigned why said judgment should be reversed, which we will proceed to notice in the order in which they are presented, after we shall have disposed of a preliminary question which presents itself to our minds from the transcript before us, and which we think it well to remark upon.

In the case of *Gibson et al. vs. Wilson et al.*, 5 *Ark. Rep.* 422, it was held by this court, that in a suit by attachment, when an interplea is filed, the jurisdiction of the court, as between the in-

terpleaders, arises by virtue of the writ of attachment; and if there be no valid service of the writ, there is no suit between the parties to the interplea.    In the case at bar, there is neither *writ* nor *service*, so as to enable us to determine the jurisdiction of the court from the return and service of the writ of attachment in this case.    We are led to believe, from many facts apparent upon the face of the transcript, that there was a writ of attachment issued in this cause, and that it was served in some form or manner upon "land and cotton," and upon the express authority of *Bixby vs. The State*, 15 *Ark. Rep.* 396, and the implication in the case of *Stewart vs. The State*, 13 *Ark. Rep.* 745, if it were possible for us to affirm the judgment below, and for the purpose of affirmance alone, we would *ex-officio* award a special *certiorari* to the clerk of the Bradley Circuit Court, to supply the supposed omission in the transcript, in reference to the *writ* and *return*, for the reason that we entertain no doubt but that the writ and return both remain upon the files of the court below, and are not copied in the transcript by the misprision of the clerk.

We are fully aware of the existence of the maxims that, "all acts of an inferior court are presumed to be rightly done in a superior court," (See *Smith vs. Burry*, 1 *S. & M. Mi. Rep.* 321,) and "that the decisions of a court of competent jurisdiction, are presumed to be well founded, and their judgments regular." (Per BAYLEY, Judge, 3 *B. & C.* 327.)   Yet we do not hold these maxims to extend beyond this, that when it appears upon the face of the proceedings, that the inferior court has jurisdiction, it will be intended that the proceedings are regular; but that unless it so appears, that is, if it appears affirmatively that the inferior court has no jurisdiction, or if it be left in doubt, whether it has jurisdiction or not, no such intendment will be made.    See *Taylor vs. Clemson*, 11 *Cl. & Fin. Rep.* 610, per Lord BROUGHAM; *Dempster vs. Purnell*, 4 *Scott N. R.* 39, per TINDAL, Chief Justice, *citing Maravia vs. Slater*, *Willes* 30, and *Litley vs. Foxall*, *Ib.* 688.    But for the lone cause that no jurisdiction appears affirmatively upon the face of the transcript, as held in the case of

*Gibson et al. vs. Wilson et al.*, we would not reverse the judgment until we had awarded a special *certiorari, ex-officio*, under the rule as laid down in the case of *Bixby vs. The State*. In view of the law as laid down upon the authority of Lord BROUGHAM, and TINDAL, Chief Justice, and the other errors apparent upon the transcript in this cause, we are compelled to reverse the judgment of the court below, for the reason that no valid writ of attachment and return thereon are shown, so as to give the court below jurisdiction to try the cause upon the interplea.

Having disposed of this question, we proceed to adjudicate the points presented by the assignment of errors.

The title of the appellant to the land and cotton attached in the court below, was resisted by the appellee upon the ground that he was a creditor of the defendant under the attachment law, and in contemplation of our statute of frauds; and that the conveyance of the land in question was made by the defendant to to delay, hinder and defraud his creditors. the appellant,

The appellant proved beyond all question or doubt, by her deed, that the legal title to the land described therein, being the same land supposed to be attached, was in her for months prior to the attachment, and that she was then and had been, from the date of the deed, in the possession and enjoyment of said lands thereunder. It was also as conclusively proved on the trial, that the cotton attached was the produce of said land, and the labor of the slaves of the appellant; and that it was also in her *sole possession* at the time of the levy of the attachment. We think these facts render it clear, beyond controversy, that the property both in the land and cotton, was in the appellant at the time of the issuance of the supposed attachment, and at the time of the trial upon the interplea in the court below. There was not a solitary fact developed by the evidence, from which the jury could have legitimately inferred fraud in the transaction, if it had been competent for them to have made any such inference in such a proceeding, for we hold the law to be "that whilst fraud may be presumed, from circumstances, in a court of equity, it as a fact,

must be próved like any other fact in a court of law." See *Gallatian vs. Cunningham*, 8 *Cow. Rep.* 361 ; ¹ *S. & M. (Mi.) Chan. Rep.* 135; *Dardenne vs. Hardwick*, 4 *Eng. Rep.* 482.

It certainly will not be seriously insisted that the defendant had not a perfect right to make a sale of the land in question, at the time it seems the sale was made in this case. No fraud could have been inferred, even against defendant from that act. No fraud is patent from the deed to the appellant; none could be drawn from that source. The fact of the defendant's indebtedness to the appellee, is not a fact, coupled with any other fact proved on the trial, which would raise even a presumption of fraud against the defendant. The fact of the conveyance being made by a son to a mother does not of itself, or when coupled with any other fact proved on the trial, throw the slightest suspicion upon the transaction ; and the remaining fact that the defendant continued to live with his mother on the land conveyed, after the date of the the deed up to the 1st August, 1852, in our opinion should not have weighed a feather, either with the court or jury, imputting fraud to the defendant. We therefore, hold, that the instruction given by the court to the jury, was wholly an abstract one, and had no connection with the case, as made out by the facts, and as such was calculated to mislead the jury, as it clearly must have done.

But this instruction is erroneous for another reason. It seems to assume that the sale from the defendant to appellant could be fraudulent as to the appellant without her concurrence in the fraudulent designs of the defendant in respect to his creditors. Now it is the *intent* that makes a conveyance fraudulent as to creditors, and this *intent* must be *participated* in by *both* parties. See *Peck vs. Carmichael*, 9 *Yerg. Rep.* 327, 328 ; *Trotter vs. Watson*, 6 *Hump. Rep.* 509; *Jones vs. Read*, 1 *Ib.* 345; *Farmers Bank et al. vs. Douglass et al.*, 11 *S. & M. (Mi.) Rep.* 469; *Dardenne vs. Hardwick*, 4 *Eng. Rep.* 486.

We think it also clear that the court below erred in not giving the instruction asked for by the appellant, for her deed coupled

with possession invested her with all the title which was in her grantor, and until it was overturned and destroyed by fraud, entitled her to recover in the trial below.

We are further of the opinion, that the court below erred in not permitting the appellant to prove that she had actually paid the consideration set forth in her deed. See *Farmers Bank et al. vs. Douglass et al., above cited.* It is true, that such evidence would have been only cumulative of her evidence, the fact of the payment of that amount having been *prima facie* established by the deed itself. But courts have no right to exclude evidence solely on the ground that it is cumulative, without the judge should discover that the party or his counsel, is unnecessarily cumulating evidence to the hinderance of business in court, and the unnecessary annoyance and expense of his adversary. In which case, we apprehend, his power would be unquestionable. In the case at bar, we discover no such circumstances manifested by the transcript.

Wherefore, for these several errors, the judgment of the Bradley Circuit Court is reversed, and the cause remanded to be proceeded in according to law, and not inconsistent with this opinion.

Mr. Chief Justice ENGLISH did not sit in this cause.