NATIONAL EQUITY LIFE INSURANCE COMPANY v. PARKER.

4-3806

Opinion delivered March 25, 1935.

*M. J. Harrison* and *Moore, Gray, Burrow & Chowning, for* appellant.

*Huie & Huie* and *H. T. Harrison,* for appellee.

SMITH, J. As appears from the facts stated in the opinion on a former appeal in this case (*National Equity Life Insurance Co.* v. *Parker,* 188 Ark. 1041, 69 S. W. (2d) 280), this is a suit upon a life insurance policy which contained the recital that: "This policy is issued in consideration of the application herefor, a copy of which is attached hereto and made part hereof, and of the payment in advance of seventy-six and 08/100 dollars, being the premium for one year's term insurance from the date hereof and the advance reserve required by law, and the further payment of a like amount on or before the first day of July in every year thereafter during the continuance of this policy." The plaintiff recovered a judgment, which was reversed upon the appeal for the refusal to give, at appellant's request, an instruction numbered 4, reading as follows: "You are instructed that, if you believe from the evidence in this case that the only premium paid by Joseph W. Parker was the monthly premium of $8.70 paid at or before the time of the delivery

of the policy, then said policy lapsed at the end of the thirty-one days' grace period on September 1, 1931, and you should find for the defendant.'' The policy was dated July 1, 1931, and the insured died March 15, 1932.

At the second trial, upon the remand of the cause, the plaintiff identified the policy and herself as the beneficiary thereunder and introduced it in evidence. She testified also that she had furnished proof of the death of the insured, and then rested, and no further evidence was introduced at the trial from which this appeal comes on her behalf. A motion was filed and served before the trial requiring the plaintiff to produce the check, or other evidence showing how the premium had been paid, to which no response was made. Plaintiff again recovered judgment for the face of the policy, and for the affirmance of that judgment it is insisted that the recital of the policy above quoted is an acknowledgment of the payment and receipt of a full year's premium, which sufficed to keep the policy in full force and effect to a time beyond the date of the death of the insured; and that the jury was warranted in finding, as was found, that the presumption of payment raised by the possession of the policy containing the above recital was not so conclusively overcome by the testimony as to justify the withdrawal of the question of payment of premium from the consideration of the jury. It is insisted also that the effect of the former opinion was to hold that this question of payment was a proper question to be submitted to the jury, and that, inasmuch as that question was submitted under instructions given at the former trial, which were not held erroneous in the former opinion, the judgment should be affirmed.

The decision of that question requires a recital of the testimony to show wherein the present record differs from that on the former appeal. In that connection the fact may be restated that in the present record appellee relies solely upon the presumption arising from the possession of the policy containing the recital as to payment of premium above quoted.

Appellant's first answer is that the recital quoted is not an acknowledgment of the payment of a year's premium, inasmuch as it does not recite that the sum

named was received by the company. Appellant cites a number of cases sustaining that contention, and, among others, the case of *Missouri State Life Insurance Co.* v. *Salisbury*, 279 Mo. 40, 213 S. W. 791. The policy there sued on contained a recital quoted in the opinion in that case very similar to the one hereinabove quoted. The Supreme Court of Missouri there said: "That recital is not a specific acknowledgment of payment; it merely states what the first payment shall be as consideration for the issuance of the policy."

Other cases are cited where the policies sued on contained the phrase, "the receipt of which is hereby acknowledged," in which cases the policy was clearly a receipt for the premium referred to. But we do not rest the decision of this case upon that distinction. It was held in the case of *Washington Fidelity National Insurance Co.* v. *Anderson*, 187 Ark. 974, 63 S. W. (2d) 535, that the delivery to and the possession of the policy by the insured is *prima facie* evidence that the first premium, the one essential to make the contract effective, has been paid; but it is only *prima facie* evidence of that fact. In the instant case it is admitted that a premium was paid, and that upon its payment the policy became effective. But for what period of time was the premium paid? If it be admitted that *prima facie* it was paid for a year, this is only *prima facie* true, for, as was said in the Anderson case, *supra*, "Such *prima facie* case may be overcome." The case of *Industrial Mutual Indemnity Co.* v. *Perkins*, 87 Ark. 70, 112 S. W. 176, is to the same effect.

Appellee's case rests wholly upon this presumption; but we are of the opinion that the undisputed evidence overcomes this presumption. It is to the following effect: Meyer, the insurance agent who took the application, testified that he was not then employed by the appellant insurance company, and that the applicant applied for a policy upon which the premium was payable monthly. Premiums were ordinarily payable annually, semi-annually, or quarterly, and were not payable monthly except upon special request. Parker, the insured, made that request, and upon this request there was written into that portion of the application inquiring whether the premium

should be annual, semi-annual, or quarterly, the word "monthly." The agent testified that the application thus written was signed by Parker, and was sent to the company as the application upon which the policy was written. At the former trial the beneficiary and her brother testified that the signature of Parker was not his genuine signature. This evidence that the application was a forgery was thought sufficient to raise the question as to the genuineness of the application, although a photographic copy of the application was attached to the policy sued upon.

There was no evidence at the trial from which this appeal comes tending to impeach the verity of the application as signed by the insured. Moreover, the policy has upon its back a typewritten statement of the amount of money required to pay the premium annually, semi-annually, quarterly, or monthly, the monthly premium being $8.70. This application contained the recital that: "The payment of any installment shall not maintain the policy in force beyond the time the next installment becomes due." Meyer further testified that he collected only $8.70, covering the first monthly premium, and that he made no other collection. He also testified that, when he received notice from the home office of the company that Parker had paid only one premium, and that the policy had lapsed on that account, he went to see the insured about reinstating the policy, but the insured told him that he was unable to pay the premiums. He saw Parker on two subsequent occasions and was given the same answer each time.

The insurer's actuary testified that the policy was issued upon the application for the policy with premium payable monthly, which application was received June 23, 1931; that "the policy was issued and sent to Mr. Meyer for delivery; that the company also sent a form which we use when a request, in connection with an ordinary policy, is made for payment of the premiums other than annually, to be signed by the insured at the time of the delivery of the policy. The instructions in the delivery sheet told Mr. Meyer to have this form signed and returned to the home office." This request or form was returned to witness apparently signed by Parker, and was

introduced in evidence. No testimony was offered tending to impeach its verity. The witness testified that the insurance company's record showed the payment of $8.70 only. That a properly addressed notice was sent to the insured of the premium due August 1, and that on September 2, after the expiration of the thirty-one days' of grace, the insured was notified by letter that the policy had lapsed. The witness testified that he had personal knowledge of the accuracy of these records.

The bookkeeper, whose duties were limited to the recording of the first premiums paid on policies, testified that she made an entry of the first payment on July 9, 1931, which was credited on her records as follows: $6.85 for life premium, $1.31 for disability premium and $0.54 for double indemnity premium, these items totaling $8.70. Miss Payne, an employee of appellant who keeps the record of all premiums other than the first premiums, testified that there was no record of any premium except the first, and that, had there been, her records would have shown that fact. Mrs. Satterwhite testified that she was notice clerk, and that she kept the records showing the dates upon which notices were mailed to policyholders, the cards as to monthly premium payers being of a different color from the other cards, and that the card relating to Parker's policy showed notice mailed to the insured on July 20 of the payment due August 1, and notice mailed on August 20 of the payment due September 1, and that the card showed also the mailing of notice that the policy had lapsed. There is no fact or circumstance tending to question the truth of any of this testimony save only the presumption to which we have referred.

The case of *National Equity Life Ins. Co.* v. *Bourland*, 179 Ark. 398, 16 S. W. (2d) 6, was a suit upon a policy which the appellant here had also issued, and which contained the identical recital "of the payment in advance of an annual premium" found in the policy here sued on. In that case the payment of premium was changed, at the insured's request, from an annual to a quarterly premium. The policy lapsed for the failure to pay a quarterly premium before the expiration of a year. It was there held (to quote a headnote in that case) that, "Where the insured recognized the correctness of the

quarterly premium dates, of which he was notified frequently by the insurer, his failure to pay a quarterly premium when due *held* to forfeit his policy."

So, here, the undisputed and unexplained application of the insured for a policy with premiums payable monthly, and the subsequent formal request to the same effect, both signed by the insured, show beyond question that the policy sued on was issued in consideration of a monthly, and not an annual, premium; and we think it equally as certain that only one premium was paid, and that this premium was insufficient to keep the policy in force until the date of the insured's death.

It follows therefore that the judgment must be reversed, and, as the case appears to have been fully developed, it must be dismissed, and it is so ordered.