## LYON *v.* MUTUAL BENEFIT HEALTH & ACCIDENT ASSN.

No. 189. Submitted December 12, 1938.—Decided January 3, 1939.

---

[9] 32 Stat. 400 (1902); 35 Stat. 268 (1908).

*Mr. John W. Nance* submitted for petitioner.

*Messrs. Thomas B. Pryor* and *Thomas B. Pryor, Jr.* submitted for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner, (plaintiff below) brought suit as beneficiary in the District Court against respondent (defendant below) on a health and accident policy issued by respondent in 1926 to petitioner's husband. Plaintiff alleged that the insured was accidentally killed July 26, 1934, while the policy was in full force and effect insuring against death resulting from accidental causes. At

the conclusion of plaintiff's evidence, defendant declined to offer any evidence and did no more than move for a peremptory instruction. Defendant's motion was based upon the contentions that (1) the policy was not in effect when insured was killed because defendant had exercised an option granted it by the policy to reject the quarterly premium due July 1, 1934; (2) that the "premium receipts themselves show that the policy terminated on the first day of July, 1934, prior to the time this loss occurred." Defendant's motion for peremptory instruction was denied, defendant excepted, and the court directed the jury to return a verdict for plaintiff. Defendant's exception was noted, the jury rendered verdict for plaintiff, and the court entered judgment upon the verdict.

The Court of Appeals reversed,[1] holding that the policy was term insurance and reserved to defendant the right to reject any quarterly premium on the due date, that defendant had properly exercised its option in rejecting the quarterly premium due July 1, 1934, and that the policy was, therefore, terminated prior to insured's death. The court further held that no competent evidence had sustained plaintiff's allegations that the required premiums had been paid. We granted certiorari.[2]

In the view we take of the case, it is unnecessary to consider plaintiff's contention that the Court of Appeals erred in holding that defendant had the option to cancel the policy upon the due date of any quarterly premium. We find that there was competent and substantial evidence to sustain plaintiff's allegation that insured had paid premiums sufficient to keep the policy in effect up to and including the date of insured's death.

The evidence showed that:

The policy sued on was issued December 31, 1926; after advance payment of $74.00 for the first year's pre-

---

[1] 95 F. 2d 528.

[2] *Post*, p. 583; cf. *Ruhlin* v. *New York Life Ins. Co.*, 304 U. S. 202, 206.

mium, the policy was delivered to insured; thereafter, all quarterly premiums were paid to the defendant's local treasurer located at Rogers, Arkansas (where the policy was sold and delivered) up to and including the quarterly premium due January 1, 1934; these premiums were usually paid in advance, but not always; before April 1, 1934, plaintiff as agent for the insured went to the office of the local treasurer at whose office she had paid all the other premiums; he could not be found at the office; a young girl in the office suggested that the payment be sent to Little Rock; plaintiff mailed that payment to Little Rock and received a receipt dated March 30, 1934; plaintiff had not then received, and never did receive any notice from the company that it had moved its office or changed its method of collecting premiums; July 1, 1934, when the next premium was due she went to the local treasurer's office and found it closed; diligent search for him disclosed that not only had his office been closed, but he had moved from the house in which he had formerly resided; continuing to search for the treasurer, she finally found him several days later early in the morning entering a car in front of his office; he declined to accept the premium, told her to send it to Little Rock, and informed her that she should have received a notice from the company to that effect; that day, July 6, she bought a money order, "addressed the envelope just to the company at Little Rock" and mailed it; July 13, the Little Rock office of the company wrote her that it could not accept the payment because the Omaha home office had not sent an official receipt for this policy payment; in that letter and in a subsequent communication of July 26, the Little Rock office offered to reinstate the policy but with restricted benefits; on July 26, however, the insured was killed by accidental means within the terms of the policy. The defendant offered no evidence whatsoever.

*First.* The policy provides as to premium payments that "this policy is issued in consideration of . . . the payment in advance of $74.00 the first year, and the payment in advance of . . . $16.00 quarterly thereafter, beginning with April 1, 1927, is required to keep this policy in continuous effect." This language is clear and nothing elsewhere in the policy alters its meaning. True, the printed application signed by deceased, December 27, 1926, and upon which the policy was issued four days later, contains the printed question, "What is the premium?" and a typewritten answer, "$16.00 quarterly." However, this is not inconsistent with the provision of the policy for the payment of $74.00 in advance and $16.00 quarterly premiums. The provision for payment in advance of $74.00 the first year required payment before the date the policy took effect, which according to the policy was the date of issue. Under the language of this provision actual payment of a year's premium in advance purchased insurance for a year. The dates for further payments to extend the policy beyond a year could be and were fixed by the policy contract. Payment for the first year carried the policy to December 31, 1927, and the first quarterly payment, due by the policy's terms April 1, 1927 and paid in advance of that date, extended the policy another quarter beyond December 31, 1927. Each succeeding quarterly payment carried the policy a corresponding three months. The questions before the trial court were whether the $74.00 first payment was actually made, and whether thereafter quarterly payments were made in an amount sufficient to carry the policy from the end of the first year up to and including the quarterly period in which death of insured occurred.

Since the policy recites that "this policy is issued in consideration of . . . the payment in advance of $74.00 the first year . . .," delivery of the policy prima facie

established the fact of the advance payment of that amount.[3] This evidence was reinforced by plaintiff's testimony that the $74.00 was so paid. Defendant made no objection to this testimony. On cross-examination by defendant, plaintiff amplified her testimony as to why she paid the quarterly premium in April, 1927, after having already paid the premium for a whole year before the policy was delivered. She explained that this was because defendant's representative told her and the insured that "there were no days of grace included in the policy, but if we paid a year's premium in advance that would take the place of these days of grace."

Although defendant did not object to plaintiff's testimony of payment, and evoked explanation of it on cross-examination, the Court of Appeals, without any reference to governing State law,[4] concluded that the evidence was incompetent. That court believed this evidence represented an effort to alter the terms of the written policy contract by an oral agreement violating the provisions that "This policy . . . contains the entire contract of insurance," and "No agent has authority to change this policy or to waive any of its provisions." But this evidence of payment of premiums as required by the policy, did not affect the terms of the written contract. It was offered to prove the discharge of the insured's obligation under the contract. The evidence was material to establish the fact of payment. No statutes of Arkansas or decisions of the highest court of that State[5] have been

[3] *Washington Fidelity Nat. Ins. Co.* v. *Anderson,* 187 Ark. 974, 976; 63 S. W. 2d 535; *National Equity Life Ins. Co.* v. *Parker,* 190 Ark. 642, 644; 80 S. W. 2d 630; cf. *Splawn* v. *Martin,* 17 Ark. 146, 153.

[4] See 28 U. S. C., § 724.

Cf. *D'Wolf* v. *Rabaud,* 1 Pet. 476, 502; *Wilcox* v. *Hunt,* 13 Pet. 378, 379; *Nashua Savings Bank* v. *Anglo-American Co.,* 189 U. S. 221, 228; cf. *Erie R. Co.* v. *Tompkins,* 304 U. S. 64.

[5] Cf. *Erie R. Co.* v. *Tompkins, supra.*

pointed out which would make such relevant evidence incompetent.[6] The $74.00 payment for the first year, together with quarterly payments undisputedly made through April 1, 1934, carried the policy to January 1, 1935. We, therefore, find it unnecessary to consider whether the six days delay in paying the July 1, 1934 premium was excused by reason of attendant circumstances.

*Second.* The Conformity Act requires that "The practice, pleadings, and forms and modes of proceeding in civil causes . . . in the district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the State within which such district courts are held, any rule of court to the contrary notwithstanding." [7]

Our attention has not been directed to any more authoritative Arkansas ruling governing the procedural effect of a request for a peremptory instruction without more, than the decision of the Supreme Court of Arkansas in *A. B. Smith Lumber Co.* v. *Portis Bros.,* 140 Ark. 356; 215 S. W. 590. There the Court said (at 358, 359, 360): "The cause . . . proceeded to a hearing upon the pleadings and evidence. When the evidence was concluded, appellant requested a peremptory instruction, and no other. The court refused the instruction over the objection of appellant, and, on its own motion, instructed the jury to return a verdict in favor of appellees . . . over the objection and exception of appellant. . . . and the court, on its own motion, gave a peremptory instruction for appellee. The request for a peremptory

---

[6] Cf. *Splawn* v. *Martin, supra; Vaugine* v. *Taylor,* 18 Ark. 65, 79; *Borden* v. *Peay,* 20 Ark. 293, 306; *Hill* v. *First National Bank,* 129 Ark. 265, 269; 195 S. W. 678; *Lay* v. *Gaines,* 130 Ark. 167, 170; 196 S. W. 919.

[7] 28 U. S. C., § 724.

instruction by appellant and the giving of the peremptory instruction by the court for the adverse party was tantamount to submitting the case to the court sitting as a jury, and the court's finding became a verdict as much so as if it had been rendered by a jury upon the issues and evidence. . . . So the question presented by this record is not whether there was sufficient evidence in the record to warrant the court in sending the case to the jury upon the issue of whether or not the undertaking was collateral, but the question is, Was there any legal evidence to support the finding of the court that the undertaking was original?"

This rule of procedure closely approaches that frequently approved by this Court on the same subject, to the effect that " 'where both parties request a peremptory instruction and do nothing more they thereby assume the facts to be undisputed and, in effect, submit to the trial judge the determination of the inferences proper to be drawn therefrom'. And upon review, a finding of fact by the trial court under such circumstances must stand if the record discloses substantial evidence to support it." [8]

Here, there was ample evidence upon which to justify the verdict. Defendant obviously proceeded—after the evidence was closed—upon the belief that the facts and all the inferences to be drawn therefrom raised only a question of law for the court—not one of fact for the jury; and plaintiff acquiesced. Neither defendant nor plaintiff did anything to indicate a desire or belief that the jury should pass upon any facts. Thus, the District Court sitting in Arkansas, having jurisdiction only by reason of diversity of citizenship and trying a suit involving an Arkansas contract, followed the procedural rule announced by the highest court of that State.

[8] *Williams* v. *Vreeland*, 250 U. S. 295, 298; *Aetna Ins. Co.* v. *Kennedy*, 301 U. S. 389, 393.

While litigants in federal courts cannot—by rules of procedure—be deprived of fundamental rights guaranteed by the Constitution and laws of the United States, the local Arkansas rule followed by the District Court does not result in such deprivation. In effect, that local rule is practically identical with the federal rule which treats a request by both parties for peremptory instructions without more as a submission of issues of fact to the court. It is essential that the right to trial by jury be scrupulously safeguarded, and a state rule of procedure entrenching upon this right would not require observance by federal courts.[9] However, this Arkansas procedural rule—so closely approximating the federal rule—does not amount to a prohibited invasion of federal rights. Since the District Court followed the Arkansas procedural rule, and the verdict and judgment were supported by competent and substantial evidence, it follows that the Court of Appeals erroneously reversed the District Court's judgment. The judgment of the Court of Appeals is, therefore, reversed and that of the District Court is affirmed.

*Reversed.*

MR. JUSTICE ROBERTS did not participate in the consideration or decision of this case.

MR. JUSTICE BUTLER:

MR. JUSTICE McREYNOLDS and I are unable to accept the opinion or to agree with the judgment of the court just announced.

We are of opinion that the judgment of the Circuit Court of Appeals should be reversed, and that, for the reasons given in the separate opinion of Circuit Judge Stone, 95 F. 2d 528, 534, the case should be remanded to the District Court for proceedings in accordance with that opinion.

---

[9] Cf. *Davis* v. *Wechsler*, 263 U. S. 22.