### COHEN v. MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N.

No. 6185.

United States District Court
W. D. Missouri, W. D.

May 20, 1950.

Myer M. Rich, Kansas City, Mo., for plaintiff.

Henry I. Eager and Henry G. Eager, of Blackmar, Newkirk, Eager, Swanson & Midgley, Kansas City, Mo., for defendant.

REEVES, Chief Judge.

There is scarcely an issue of fact in this case. Counsel for the defendant have earnestly and zealously urged that defendant's motions for a directed verdict at the close of the plaintiff's case, and at the close of all of the evidence, should have been sustained. Since the court permitted the case to go to the jury, it is now contended with equal earnestness that the motion to set aside the verdict and to enter judgment for the defendant non obstante veredicto should be granted.

A statement of facts would be clarifying and helpful: On March 9, 1928, the defendant issued its contract or policy of insurance to the plaintiff, Louis 'Cohen, and which policy was described on the face and back thereof as follows:

"This Policy Provides Benefits for Loss of Life, Limb, Sight or Time by Accidental Means, or Loss of Time by Sickness as Herein Provided"

Under the subheading "Additional Provisions," the policy provides that a premium "(c) * * * payment in advance of One Hundred Sixteen ($116.00) Dollars the first year; and the payments in advance of Ninety-six ($96.00) Dollars annually or Twenty-four ($24.00) Dollars quarterly thereafter beginning with July 1, 1928, is required to keep this policy *in continuous effect.*" (Emphasis mine.) There was a provision, however, that it was optional with the Association (the defendant) whether it should accept a premium payment, and it contained this further provision: "(d) The term of this policy begins at 12 o'clock noon, Standard Time, on date of issue against accident and on the thirty-first day after date of issue against disease and ends at 12 o'clock noon on date any renewal is due."

On the face of the policy the following liberal benefits were vouchsafed to the policyholder.

"Part B. Annual Increase Four Hundred Dollars Per Year

"After the first year's premium has been paid, each year's renewal of this policy shall add Four Hundred Dollars to the death benefit until the same amounts to Eight Thousand ($8,000.00) Dollars."

"$8,000.00 Twenty Year Privilege

"When Twenty full annual premiums have been paid, the death benefit of $8,-000.00, as herein provided, may be continued in force thereafter at a yearly cost of $8.00 without a medical examination."

On the second page of the policy under subsection entitled: "Illness Indemnities" appears:

"Part H. Confining Illness Two Hundred Dollars Per Month for Life

"The Association will pay, for one day or more, at the rate of Two Hundred ($200.00) Dollars per month for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which confines the Insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time."

On October 30, 1942, although all premiums had been regularly paid conformable to the requirement of the policy, the defendant procured from the assured the following to be attached as a rider to the policy:

"One Year Limiting Rider

"In consideration of the acceptance of any renewal or reinstatement premium on Policy No. DD 3511 to which this rider is attached and made a part, said policy is amended so that one year shall be the maximum period for which benefits are payable for loss of time under the confining illness and total accident disability provisions.

"This rider shall be effective on the date of the next premium payment on said policy

and any provision in the policy inconsistent with this rider is hereby modified to agree herewith.

"I fully understand and agree to the amendment provided in this rider which is signed in duplicate.

"Dated Oct 30 1942      Louis Cohen

"Louis Cohen    Insured
"Mutual Benefit Health
& Accident Associa-
tion

"Countersigned by
"F. L. Stephens

"Resident Agent
"Form YLR—Series 1-40

C. C. Criss
"President."

After this Rider was attached, towit, on or about April 5, 1947, the plaintiff having continued to pay his premiums, claimed total disability within the purview of the policy, which disability resulted, as he stated, from disease. Upon proofs, the defendant made payment at the rate of $200 per month for one year, ending April 5, 1948, and thereafter refused to make further payments. The plaintiff has sued for total disability and contends that the so-called "One Year Limiting Rider" was without consideration and void.

There was introduced in evidence a letter to the assured from the defendant wherein, in substance, it was stated that it was the desire of the Association to give to the assured a benefit in case of a disabling illness, and there was an intimation that such provision was not currently existing in the contract. Said letter is hereinafter set out. There was no controversy but that the plaintiff was induced to sign the rider above set out. The consideration, however, is challenged, and since other questions were submitted to a jury and a verdict was returned in favor of the plaintiff, the only legal question here is whether the court erred in excluding from the consideration of the jury the above mentioned rider as being without consideration.

1. Much is said in the briefs about the comment of the court at the time the case was tried in relation to the increasing benefits of the policy by reason of persistency in the payment of premiums as vouchsafing to the plaintiff some rights, and attention is called to the opinion of the Eighth Circuit Court of Appeals, where apparently this defendant was in litigation with one of its policyholders. The case is entitled Mutual Ben. Health & Accident Ass'n v. Lyon, 8 Cir., 95 F.2d 528. The only point involved in that case was whether the premium payment had been made so as to keep the policy in force at the date of the assured's accidental death. The trial judge believed that the policy was in force by reason of premium payments. The Court of Appeals, in a majority opinion, thought otherwise and in effect reversed the case outright. Senior Circuit Judge Stone who sat in the case dissented as he believed there was a case for the jury solely on the question of premium payments. On certiorari to the Supreme Court, 305 U.S. 484, 59 S.Ct. 297, 83 L.Ed. 303, the peremptory instruction in favor of the plaintiff by the trial judge was sustained. In the opinion by the Court of Appeals, and as an obiter dictum, the question of the right of the Association to terminate the policy in view of the increasing benefits vouchsafed was discussed, and it was held that these provisions would not debar the company the right to refuse to accept the renewal premium and thus terminate the policy.

The right is a technical one and defeats important and valuable rights conspicuously vouchsafed to the assured on the front page of the policy. It is said that "a technicality has been well defined as a microbe which has gotten into the law and gives justice the blind staggers." Such is the legal effect of this provision appearing on the back page of the policy. No contention is made here contrary to the holding of the Court of Appeals in the Lyon case, supra, although, as stated, that case was reversed outright.

2. It was the view at the trial of the case and is now the view that so long as the premiums were paid, the defendant had no right, without consideration, to limit the benefits in the light of the clear promise to increase such benefits for persistency in premium payments.

The Kansas City Court of Appeals, in the case of Rice v. Provident Life & Accident

Ins. Co., 231 Mo.App. 560, 102 S.W.2d 147, loc. cit. 150, held that whereas the insurance carrier in that case would have the right to terminate the policy by reason of refusal to accept the premium for such renewal, yet, said the court: "It does not necessarily follow * * * that, because the defendant might at any time have canceled the policy and put it to an end, it therefore had the right, under the terms of the policy, to demand an increased premium of the plaintiff in order that it be not canceled but kept in force. * * * It had the right at the expiration of any thirty-day period to refuse to accept the regular monthly premium stated therein and to put the policy to an end; *but it had no right under the terms of the policy to demand an increased premium in order that it might be continued.*" (Emphasis mine.)

A fortiori, the defendant could not limit its liability without at the same time reducing the premium charge. Whatever the facts in the Rice case, supra, the principle announced is a good one. In this case, the contract contemplated premium payments over a period of 20 years and granted to the assured certain benefits if he continued to pay such premium; and though the assured did pay his premiums, yet his reward is a reduction of benefits, although it was contemplated that for the designated premium payments the benefits would increase.

3. Apparently the defendant concluded that, because of the attained age of the plaintiff (having reached the age of 65 on April 5, 1942) it was unwise to continue the benefits promised when the policy was issued on March 9, 1928. The policyholder was then 51 years of age. The remarks of the court concerning the increased benefits related solely and alone to the contemplation of the parties when the policy was issued.

In principle, as said in the Rice case, it was not within the rights of the defendant to coerce the assured to agree to a reduction of benefits without at the same time reducing the premium. As stated, it was contemplated by the parties when the policy was issued that if annually renewed, whether at the will of the plaintiff or at the will of the defendant, for a period of 20 years, the benefits would be increased, and not reduced, for the agreed premium payment.

The one year limiting rider was dated October 30, 1942. To procure the assured's signature to this rider the defendant wrote the assured the following letter dated October 15, 1942, and offered as defendant's exhibit number 21:

"Mr. Louis Cohen,
"3229 E. 27th Street
"Kansas City, Mo.      Re Policy DD 3511
"Dear Mr. Cohen:

"In disability insurance, the chief problem is the time limit for which we should offer you protection.

"You know most companies discontinue all disability protection at age 55 or 60. It has been a pleasure to offer protection beyond those ages as we have always felt that anyone gainfully employed was entitled to it.

"Our Underwriters have worked out a plan so that we can offer you protection at your present age. Here is the plan.

"Your present policy can be amended so that total disability accident and confining illness benefits will be paid for a period of one year. To complete the amendment, please sign the attached endorsements and return them to us with your policy. This amendment does not affect the other provisions of your policy and there is no increase in premium. After the policy has been properly amended, we will return it to you.

"Attached is your regular premium notice and we hope you will cooperate with us so we may continue our friendly business relations.

> "Sincerely,
> "Mutual Benefit Health
>    & Accident Ass'n

"RLT:DJ        Policy Service De-
"Encs. 3 P282       partment"
"cc: F L Stephens

Note the following excerpts from this quite unusual letter: "Our underwriters have worked out a plan so that we can offer you protection at your present age." The assured had enjoyed such protection for

fourteen years and the policy terms provided protection for the future. "This amendment does not affect the other provisions of your policy and there is no increase in premium." By the above letter defendant obtained plaintiff's signature to the "One Year Limiting Rider." The manner in which the defendant procured the signature of the assured to the rider which it urges as a defense recalls "the pretty worm of Nilus * * * that kills and pains not." "The pretty worm of Nilus" was the deadly Asp given to Cleopatra in a basket of flowers.

Counsel have asked for an oral argument on the motion to set aside the verdict and judgment. At the time the case was tried it was extensively argued and no reason appears why there should be further argument in the case.

In view of the above, the motions should be overruled, and it will be so ordered.