**PERMALUM WINDOW & AWNING MFG. CO. et al., Appellants,**

v.

**PERMALUM WINDOW MFG. CORP., Appellee.**

Court of Appeals of Kentucky.

March 17, 1967.

Jack M. Lowery, Jr., Louisville, for appellants.

Jerry A. Lloyd, Louisville, for appellee.

WILLIAMS, Chief Justice.

Appellee Permalum Window Mfg. Corporation of New York (hereinafter referred to as New York) sued appellant Permalum Window and Awning Manufacturing Company of Louisville (hereinafter referred to as Louisville) for $8,541.23 due on account. Louisville counterclaimed for $564.88 overpayment and for $10,000 damages for New York's breach of contract.

In January 1961 New York's factory was gutted by fire. They had orders that should be filled. Steinek, owner of 50 per cent of the stock, and secretary of the corporation, came to Kentucky and made an oral contract with Louisville whereby New York would furnish the raw materials and Louisville would produce storm windows to fill New York's orders. Under the arrangement, at the end of a month the cost of the raw materials was to be balanced against the cost of the finished product to determine who owed any money on the mutual account. As an incentive New York was to give Louisville a 15 per cent

discount on all extrusions used in the manufacture of New York's orders. The cost of accessories was to be the base cost. Louisville was to pay common carrier charges F. O. B. New York and New York was to pay freight F. O. B. Louisville.

This business relationship continued until Louisville wrote New York that prices on the finished product must be raised in order for it to continue production. New York immediately discontinued relations for production purposes as of June 2, 1961.

As heretofore pointed out, New York sued for $8,541.23. At the trial both parties' motions for directed verdicts were overruled. The trial court refused tendered instructions. Louisville objected. No instruction was given on Louisville's counterclaim for $10,000 damages. The court instructed the jury to find for New York and credit Louisville as much as $4,271.56. The jury credited Louisville $3,041.23 and awarded New York $5,500.00. Louisville appeals.

■ The first issue before this court is whether the trial court properly directed a verdict for New York on the amount due. There are conflicts in evidence pertaining to amounts owed and credited each party. It appears before corrections were attempted that about $51,000 worth of material was used to produce $47,000 worth of windows.

One conflict is whether Louisville was to pay *all* freight charges F. O. B. New York at common carrier rate or only the freight charges for material sent by common carrier. New York shipped most materials to Louisville on its own truck. A second conflict is whether a New York employee who was sent to Louisville as a supervisor at a salary of $110 per week was to be paid by New York or Louisville. A third conflict is whether a $6,000 check paid to Louisville was persuasive compensation to continue production or a loan to finance the continuance of production debited against Louisville's account. A fourth conflict is whether the numerous two to three-day delays in receipt of raw materials caused a reduced work schedule, stoppage and/or the necessity for overtime work.

New York contends that all freight charges F. O. B. New York were to be paid by Louisville at common carrier rate. Louisville contends that only common carrier charges were to be paid by Louisville. New York used a private truck to bring most of the raw materials to Louisville and on return trips the truck took finished windows to New York. Louisville did not consider this common carrier freight.

Zecca, an employee of New York before the fire, was sent to help Louisville in production techniques. New York charged Louisville's account with Zecca's salary for the nine weeks Zecca worked in Louisville —$990, or $110 per week. Zecca was paid by New York. New York only charged Louisville for the straight salary. New York paid the workmen's compensation and other benefits. Louisville contended that New York was to pay Zecca and that it was not to be charged for Zecca's salary.

The alleged loan of $6,000 that New York charged to Louisville's account was made by check from New York. Louisville understood the check to be for Louisville's agreement to continue production because otherwise New York would be in a bad position with its customers. Louisville contends this $6,000 should not be charged against its account. The only writings on the subject are the check ("on account") and a note on New York's book designating the check as a loan.

Louisville alleged that it couldn't clear any profit if its employees had to work overtime to make up for delays. On cross-examination Mr. Owsley, of Louisville, mentioned delay was also due to lack of glass. Zecca testified three or four delays were caused by lack of glass. Glass was an item Louisville was to supply. Furthermore, materials delivered from New York were not ordered by Louisville. New York merely anticipated Louisville's needs.

New York corrected·charges against and favoring both parties for raw materials.

Masonic Widows and Orphans Home v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815 (1948), discusses a directed verdict as follows:

" * * * (I)t is the essence of judicial power to determine whether or not a party has produced evidence which is sufficient in law to sustain judgment in his favor and to exercise that inherent power by directing a verdict where there is lack of proof supporting the material elements of the cause of action asserted. The proper exercise of that power does not impair or defeat the constitutional right to trial by jury. Slocum v. New York Life Ins. Co., 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029; Lyon v. Mutual Ben. Health & Accident Ass'n, 305 U.S. 484, 59 S.Ct. 297, 83 L. Ed. 303, rehearing denied in 306 U.S. 667, 59 S.Ct. 459, 83 L.Ed. 1062."

The facts in the instant case are disputed. The balance due according to New York is not the same as Louisville's balance. New York's records were complete. Louisville never proved a balance due. The instructions directed a verdict for the amount of New York's balance and limited jury consideration of factual conflicts to a determination of credits due Louisville up to $4,271.56. Under the circumstances that instruction was not erroneous.

A second contention is that New York failed to establish a prima facie case for debt by evidence showing sale and delivery of goods.

■ Louisville's invoices represent the sale of the goods to it. The invoices were made in the ordinary course of business and were identified by the secretary of New York. The bulk goods were not returned but the finished product was sent to New York.

Under the facts this is a mutual account. It is not self-proving. Testimony is re-quired to prove its correctness and that it is due and owing. 1 Am.Jur.2d, Accounts and Accounting, pp. 391–392. 1 Am.Jur.2d, at page 393, states how an account is proved:

" * * * Ordinarily an account is proved by proving each item, including date, correctness of each item contained in the account, the charge made and the reasonableness thereof, and this is often done by introducing record testimony, consisting of the original book of entry with a showing that the entries were contemporaneously and correctly made with the transaction, or by oral testimony."

New York proved its accounts by records made in the ordinary course of business and by oral testimony.

As for delivery, Louisville agreed to pay common carrier charges for shipment of raw materials from New York to Louisville. Thus Louisville was to receive the goods F. O. B. New York. New York agreed to pay charges for finished materials shipped to it. In fact, New York furnished a truck for freight purposes.

Louisville cites KRS 355.2–301, the Uniform Commercial Code, on General Obligations of Parties:

"The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in.accordance with the contract."

However, the comment explaining this section says:

" * * * In order to determine what is 'in accordance with the contract' under this Article usage of trade, course of dealing and performance, and the general background of circumstances must be given due consideration in conjunction with the lay meaning of the words used to define the scope of the conditions and duties."

The Uniform Commercial Code is more specific when it comes to delivery of F. O. B. shipments. KRS 355.2–504 is the key to the contention of no delivery in this case.

"Section 2.504. SHIPMENT BY SELLER

"(1) Where the seller is required or authorized to send the goods to the buyer and the contract does not require him to deliver them at a particular destination, then unless otherwise agreed he must

"(a) put the goods in the possession of such a carrier and make such a contract for their transportation as may be reasonable having regard to the nature of the goods and other circumstances of the case; and

"(b) obtain and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement or by usage of trade; and

"(c) promptly notify the buyer of the shipment. Failure to notify the buyer under paragraph (c) or to make a proper contract under paragraph (a) is a ground for rejection only if material delay or loss ensues."

The comment following this section is pertinent.

"1. The section is limited to 'shipment' contracts as contrasted with 'destination' contracts, or contracts for delivery at the place where the goods are located. The general principles embodied in this section cover the special cases of F. O. B. point of shipment contracts and C. I. F. and C. & F. contracts. Under the preceding section on manner of tender of delivery, due tender by the seller requires that he comply with the requirements of this section in appropriate cases."

Thus the parties had what is known as a shipment contract and delivery under it is not at the destination but at the point of departure. New York proved it shipped the goods and Louisville did not affirmatively plead they were not received. In our opinion New York fulfilled its duty and established a prima facie case of debt.

The final contention is that the trial court erred in refusing to submit an instruction on Louisville's alleged $10,000 damages caused by New York's delay in shipment and merchantability of materials shipped. When a counterclaim for damages is not proved, the trial court may refuse to submit an instruction on it.

Louisville counterclaimed that the raw materials it received were delayed and were of poor quality. It did not object to the quality on inspection or use of the goods. It accepted them. Objection came when the suit to collect for them was filed. Delay in objecting to the poor quality of goods is ground for estoppel in a suit for damages for unmerchantable material or material unfit for a particular purpose known to the vendor. Cogan v. Wall, 206 Ky. 89, 266 S.W. 884 (1924).

Furthermore, no evidence was presented to prove that the material was unmerchantable and unfit for the particular purpose.

The judgment is affirmed.

All concur.