**The PEOPLE of the State of Colorado, In the INTEREST of T.A.F., a child, Petitioner-Appellee,**

v.

**B.F. and S.F., Respondents-Appellants,**

**J.L., J.E.L., E.M., P.M., J.M., and M.M., Respondents,**

**and Concerning**

**P.G.F., M.F., J.B., and D.B., Other Interested Parties.**

**No. 79CA0997.**

Colorado Court of Appeals, Div. I.

Aug. 28, 1980.

Rehearing Denied Oct. 23, 1980.

Certiorari Denied Feb. 17, 1981.

Stephen A. Reed, Asst. County Atty., Pueblo, for petitioner-appellee.

Jon S. Nicholls and David P. Holmes, Denver, Charles E. Butler, Pueblo, for respondents-appellants, respondents and other interested parties.

KIRSHBAUM, Judge.

In 1975, the trial court entered a judgment terminating the parental rights of P.G.F. and M.F. in their child, T.A.F. In 1979, S.F., the child's maternal aunt, B.F., S.F.'s spouse, and the other respondents, maternal aunts and uncles of the child who constitute a portion of the child's extended family, were made parties to the action and were enjoined from visiting the child. S.F. and B.F. appeal the trial court's permanent injunction and the trial court's denial of their request for relief from the 1975 judgment. We affirm.

In November of 1972, a petition in dependency and neglect was filed by the People for the benefit of T.A.F. and his two older brothers. The day after the petition was filed a court employee was appointed guardian *ad litem* for the three children. However, the guardian *ad litem* did not appear at any subsequent proceeding.

In January 1973, the children were declared dependent and neglected. A dispositional hearing commenced in January 1974, and S.F. testified as a witness for the parents during that hearing. In May 1975, the trial court terminated the parental rights of P.G.F. and M.F. and placed the three children in the custody of the Pueblo County Department of Social Services (the Department). The court's termination order included a finding that placement with relatives would not be in the best interests of the children. It was not appealed.

On March 17, 1978, the trial court entered an order retiring the case from the court's docket.

From July 5, 1973, to November 13, 1978, the child resided in a foster home in Pueblo, Colorado. During that time he was visited by the respondents and by his brother. In November of 1978, T.A.F. was placed for adoption with J.B. and D.B., who reside in Florence, Colorado, outside of Pueblo County.

On March 22, 1979, the People filed a motion to join B.F., S.F. and the other respondents to the dependency action and also filed a motion for temporary and permanent injunctive relief against all named respondents. On March 27, 1979, the motion to join respondents was granted.

On May 22, 1979, B.F. and S.F., individually and, allegedly, "on behalf of and as members of a class, The Extended Family of the child," filed a motion pursuant to C.R.C.P. 60(b) denominated a "motion for appropriate orders." On May 24, 1979, they filed an amended motion for appropriate orders requesting the trial court to set aside and relieve them from the May 12, 1975, termination order. It did not incorporate the class status allegations of the first motion.

On June 5, 1979, the trial court entered a permanent injunction restraining the respondents from any and all contact with T.A.F. "until the adoption . . . becomes final." On August 16, 1979, the trial court denied the C.R.C.P. 60(b) motion of S.F. and B.F. The notice of appeal in this case was filed only by S.F. and B.F.

B.F. and S.F. contend that the trial court had no jurisdiction to grant injunctive relief against respondents because the case had been retired from the court's docket prior to the filing of the People's motions. We disagree.

■ This argument challenges the lower court's jurisdiction and, therefore, may be considered on appeal even though not presented to the trial court. *Peaker v. Southeastern Colorado Water Conservancy District*, 174 Colo. 210, 483 P.2d 232 (1971). The trial court retains jurisdiction over all juvenile cases until the child is emancipated. Section 19–3–118, C.R.S. 1973. The March 1978 order removed this case from the docket of cases maintained by the trial court; it did not, however, affect that court's continuing statutory jurisdiction over T.A.F.

■ S.F. and B.F. also assert that the May 12, 1975 termination order is void because (1) T.A.F.'s guardian *ad litem* did not exercise any authority on behalf of the child, thus depriving him of constitutional rights of representation; and (2) the 1972 petition for dependency and neglect filed by

the People did not confer jurisdiction upon the trial court to terminate the parental rights of the child's natural parents. They contend they have standing to challenge the validity of the 1975 termination order pursuant to C.R.C.P. 60(b) because in 1979 they were joined as respondents to the proceedings at the People's request. We conclude that S.F. and B.F. are not "parties" as contemplated by C.R.C.P. 60(b). We therefore address neither the merits of their constitutional arguments nor the possibility that other means for resolution of such issues might be available.

C.R.C.P. 60(b), insofar as is pertinent here, states as follows:

> "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) the judgment is void . . . "

The rule, patterned upon its federal counterpart, permits one who is the object of a judicial order to challenge the validity of such order subsequent to its entry. *See Farmers Elevator Co. v. First National Bank*, 181 Colo. 231, 508 P.2d 1261 (1973); *Riss v. Air Rental, Inc.*, 136 Colo. 216, 315 P.2d 820 (1957); *Dudley v. Keller*, 33 Colo. App. 320, 521 P.2d 175 (1974). The rule permits the trial court to correct errors and to prevent injustice for numerous reasons; in most instances the party seeking relief must present evidence to justify the request for relief, thus invoking the fact-finding authority of the trial court. *See Rowe v. Watered Down Farms*, 195 Colo. 152, 576 P.2d 172 (1978).

The 1975 order terminated the parental rights of the child's natural parents. Contrary to their assertions, S.F. and B.F. did not suffer a loss of legal rights as a result of that order. Although as relatives, they could have intervened at any stage of the dependency and neglect proceedings, *People in the Interest of M. C. D. M.*, 34 Colo.App. 91, 522 P.2d 1234 (1974), they did not do so, and thus, were not parties at the time the termination order was entered.

Isolated federal cases extending standing under federal Rule 60(b) to persons not named as a party at the time of the challenged judgment are limited to contexts wherein the person seeking relief was directly affected by the challenged judgment or was in privity with a party who was the object of the judgment. *See, e. g., Mayberry v. Maroney*, 529 F.2d 332 (3rd Cir. 1976); *Wright v. County School Board*, 309 F.Supp. 671 (E.D.Va.1970). In 1975, S.F. and B.F. were not in privity with the child's natural parents with respect to the parents' parental rights; moreover, the legal interests of B.F. and S.F. were restricted by the 1979 restraining order, not the 1975 termination order. Hence, we conclude that S.F. and B.F. have no standing here to challenge the 1975 judgment under C.R.C.P. 60(b). *See In Re Four Seasons Security Laws Litigation*, 525 F.2d 500 (10th Cir. 1975); *Ratner v. Bakery & Confectionery Workers International Union*, 394 F.2d 780 (D.C.App. 1968); *United States v. 140.80 Acres of Land*, 32 F.R.D. 11 (E.D.La.1963).

Judgment and order affirmed.

VAN CISE, J., concurs.

BERMAN, J., dissents.

BERMAN, Judge, dissenting.

I dissent.

I disagree with the majority's holding that B.F. and his wife, S.F., are persons whose legal interests are not directly affected by the challenged judgment and have no standing to challenge this judgment. First, it is important to note an essential omission in the facts as stated by the majority. The May 22, 1979, motion filed by B.F. and S.F. requested appropriate orders and stated that it was filed "individually and on behalf of and as members of a class, The Extended Family of T.A.F., *and as next Friend of P.F., a minor and brother of T.A.F.*" (emphasis added). The record further reveals that P.F. is in the custody of B.F. and S.F. The May 24, 1979, amended motion for appropriate orders, while eliminating the class status allegation of the first motion, did reiterate it was filed also on behalf of the brother P.F.

Until the May 22nd motion, B.F. and his wife had never appeared before the court as interested parties, but they were thereafter joined in the action at the request of The People, at the trial court's suggestion. The motion challenged the jurisdiction of the trial court for its failure to assure the guardian *ad litem's* proper representation of the three minor children as required by § 19–3–105, C.R.S. 1973. The guardian *ad litem,* who was appointed by the then trial judge was a deputy clerk of the district court and not an attorney. Further, as the record shows, the guardian *ad litem* did not appear at any stage of the dependency and neglect proceeding nor did the court, when it considered the motion for termination of parental rights of the parents of T.A.F., P.F. and M.F. some three years later, appoint another guardian *ad litem* for the children.

B.F. and his wife, as members of the childrens' extended family, had protected rights under the Constitution. *Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), and could bring to the attention of the trial court the failure of the court to protect the rights of the children. Such a failure I perceive to be one which denies the court jurisdiction to proceed on the dependency petition and the termination of the parental rights. "Where the *object of the amended petition* was to terminate parental rights, it was plain error to proceed to the dispositional hearing in the absence of counsel for the children." *People in the Interest of M. B.,* 188 Colo. 370, 535 P.2d 192 (1975).

True, the parents did not appeal, but that fact left the children without anyone to assert their rights. It is equally true that the statute in effect providing for the appointment of a guardian *ad litem* did not require that the guardian *ad litem* be an attorney until it was amended in 1977. Colo.Sess.Laws 1977, ch. 248, § 19–11–103(3) at 1027. Nevertheless, attorney or not, her duty was to protect the interests of the children, and this she did not do.

The rights severed in this case are of the first order and find protection in both the due process and equal protection clauses of the Fourteenth Amendment. *People in the Interest of C. S.,* Colo., 613 P.2d 1304 (1980) (J. Quinn dissenting). *See also Overturf v. District Court,* Colo., 602 P.2d 850 (1974). And a child has the same fundamental rights. *See People in the Interest of K. S. and M. S.,* 33 Colo.App. 72, 515 P.2d 130 (1973).

In 1972 when the guardian *ad litem* here was appointed, the General Assembly had, effective April 21, 1972, enacted Section 22–10–8, *See* Colo.Sess.Laws 1972, ch. 36, at 154, especially § 22–10–8(3). The duties of a guardian *ad litem* are clearly outlined in mandatory form. And, the court has the obligation to ensure that these duties which devolve upon the guardian *ad litem* are in fact undertaken by the guardian *ad litem.* The failure of the court to so act was error so plain as to vitiate not only the order of dependency, but, most certainly, the termination of parental rights. I see no distinction between the duties of a guardian *ad litem* under § 22–10–8, C.R.S. and those which a guardian *ad litem* should be required to perform under § 19–3–105, 1973 C.R.S., for under either section, a petition in dependency results.

Here, the guardian *ad litem* did nothing except file an appearance on a printed form which form merely requested that the court require strict proof of the allegations made in this petition in dependency. It is beyond my comprehension to believe that this pro forma act constitutes adequate representation of the children the guardian *ad litem* was appointed to protect. Nor would adequate representation by the guardian have ignored the background of the children which was "racially and culturally of Mexican American blood ... who have participated in an extended family which includes Indian ancestors." And, here, the denial of effective assistance of counsel cannot be attributed to the children nor the appellants. *People in the Interest of V. A. E. Y. H. D.,* Colo., 605 P.2d 916 (1980).

"Litigants cannot ...—*by rules of procedure*—be deprived of fundamental rights guaranteed by the Constitution and laws of

the United States ..." *Lyon v. Mutual Benefit Health & Accident Ass'n*, 305 U.S. 484, 59 S.Ct. 297, 83 L.Ed. 303 (1939) (emphasis added); nor should litigants in state courts be denied these rights under the State Constitution and its laws.

Even had appellants not raised this issue in the trial court, we should take cognizance of it on appeal. For under C.A.R. 1(d) we have the "right and duty to notice error on appeal ... where the error could be characterized as 'fundamental' or where it is the cause of a 'miscarriage of justice.'" *Polster v. Griff's of America*, 184 Colo. 418, 520 P.2d 745 (1974).

The effect of the trial court's order preventing appellants from visiting with or contacting T.A.F. is to deny the child the blood relationship which he has with some members of his extended family and even to deny him the companionship of his brothers. I cannot in good conscience approve the procedure below, nor should this court.