**MUTUAL BEN. HEALTH & ACCIDENT ASS'N v. COHEN.**

No. 14215.

United States Court of Appeals
Eighth Circuit.

Jan. 10, 1952.

Rehearing Denied March 11, 1952.

Henry I. Eager and Henry G. Eager (both of Blackmar, Newkirk, Eager, Swanson & Midgley), both of Kansas City, Mo., Philip E. Horan, Omaha, Neb., of counsel, for appellant.

Myer M. Rich and Isadore Rich (both of Rich & Rich), both of Kansas City, Mo., for appellee.

Before STONE and COLLET, Circuit Judges, and DELEHANT, District Judge.

STONE, Circuit Judge.

This is an appeal by defendant from a judgment in consolidated [1] actions, on an accident and health policy, for sick benefits.

As issued in 1928, the policy provided monthly payments for the duration of disability resulting from disease. October 30, 1942, insured and the company executed jointly a rider to the policy. This rider limited monthly payments for illness and total accident liability to a maximum of one year.

Thereafter, insured became ill and appellant paid the monthly sick benefits for one year ending April 4, 1948. It refused further payment, and these actions were brought. The issues tried were (1) whether the foregoing rider was in effect; (2) whether insured had been continuously confined within doors, within the meaning of the policy; and (3) whether insured had received the required medical attendance, within the meaning of the policy. This rider and the provisions in the policy relating to each of the above issues will be set out in connection with the consideration of the particular issue. The trial court determined that no legal consideration was given by the company for this rider, therefore, it was invalid and ineffective. The issues as to confinement and as to medical attendance were found by a jury against appellant.

Appellant contends here (1) that the rider was valid; (2) that the Court should have directed a verdict for it on the issues of confinement and of medical attendance; and (3) that the charge as to confinement and as to medical attendance was erroneous.[2] Appellee opposes each of these contentions. As to the rider, appellee urges its invalidity for the reasons following: (1) fraud in its procurement; (2) the company did not exercise timely any right it may have had to refuse premium renewal payments; (3) conflict or ambiguity in the policy; and (4) no legal consideration to insured for the rider. In view of these various contentions of the parties, determination of this appeal is best reached by examining them in the order following: first, the validity of the rider—by consideration of the various grounds attacking its validity which appellee presents; and second, the issues as to confinement and as to medical attendance—as part thereof, the contentions that a verdict should have been directed and that the charge thereon was erroneous.

---

1. The several actions consolidated were for different successive periods of months which covered the time from April 5, 1948 to January 4, 1950 (shortly before the last suit was filed). By agreement, they were tried as one action and one judgment entered.

2. In its brief here, appellant urges an estoppel based on the execution of and the retention of this rider by insured. No such issue was in the Court below. It is not for our consideration on this appeal.

### The Rider.[3]

(1) *Fraud in Procurement.* Appellee contends this rider was procured by fraud upon insured. No such issue was pleaded, tried or submitted. It cannot be raised for the first time on appeal.

(2) *Exercise of Right to Refuse Renewal.* The contention that appellant did not exercise any right it may have had flowing from the option to accept or reject the premium payment due November 1, 1942 is based on a quotation from Rice v. Provident Life & Accident Ins. Co., 231 Mo. App. 560, 567, 102 S.W.2d 147, 151, and the fact situation here.

The Rice case was a suit for monthly benefits for the month of February and part of March, 1935 resulting from sciatic rheumatism. On July 20, 1932, Rice had received payment and had executed a release for disability resulting from a similar illness. Immediately thereafter and upon insistence of the company agent, he had jointly executed a rider eliminating liability for rheumatism, *effective July 20, 1932.* The premium had theretofore been paid up to August 1, 1932. When demand was made by Rice for the 1935 illness, the company refused payment, relying upon the rider and a policy provision that it might cancel the policy at any time by written notice and repayment of unearned premiums. The evidence as to the entire transaction seems to be that the agent told Rice "I will have to put a rider on for rheumatism" and presented him the rider, which he signed.

In denying a contention of the company that the monthly renewal on *August 1,* 1932 constituted a new contract of which the "rider" was an integral part, the Court used the language here involved. Emphasizing the portion quoted by appellee, it is as follows.

"The rider itself recites that it is subject otherwise to all conditions, agreements, and limitations of the policy as written except as in itself is specifically provided. It is true that those that make a contract may unmake it or substitute another, either wholly or partially inconsistent; *but the validity of the substituted contract must be determined,* like that of any other, *in the light of the situation existing at the hour of its making.* If valid, then it will supersede or modify the first to the extent that the two will be unable to stand together. Lieberman v. Templar Motor Co., 236 N.Y. 139, 140 N.E. 222, 29 A.L.R. 1089.

"Applying the rule thus stated, the rider in question was at the time that it was executed void for the reason that no consideration at such time existed therefor; and, being inconsistent with and repugnant to the provisions of the original policy, it cannot stand. The original policy as continued from month to month or as renewed from month to month was unaffected by such rider."

The fact situation here, to which appellee applies the emphasized words in this quotation, is that the rider here was executed on October 30, 1942 and the next renewal date was November 1, 1942—two days later.

The differences between the Rice case [231 Mo.App. 560, 102 S.W.2d 151] and this case are as follows: that case was

3. This rider is as follows.

"ONE YEAR LIMITING RIDER
"In consideration of the acceptance of any renewal or reinstatement premium on Policy No. DD 3511, to which this rider is attached and made a part, said policy is amended so that one year shall be the maximum period for which benefits are payable for loss of time under the confining illness and total accident disability provisions.
"This rider shall be effective on the date of the next premium payment on said policy and any provision in the policy inconsistent with this rider is hereby modified to agree herewith.
"I fully understand and agree to the amendments provided in this rider which is signed in duplicate.
"Dated OCT 30 1942
"(s) Louis Cohen
Louis Cohen Insured
"MUTUAL BENEFIT HEALTH &
ACCIDENT ASSOCIATION
"Countersigned by:
"(s) F. A. Stephens
Resident Agent
"(s) C. C. Criss
President"

tried and determined on a supposed right to *cancel* by a rider executed in and, by its terms, *effectvie during a period for which the premiums had been paid and accepted;* the Court held that the validity of that rider must be determined by the situation "at the hour of its making" and could not be determined as of some days later upon the next renewal date; in the present case, the rider was executed on October 30 but it expressly stated "This rider to be effective on the date of the next premium payment on said policy and any provision in the policy inconsistent with this rider is hereby modified to agree herewith."

However true the language here quoted from the Rice case may have been in the setting of that case, it has no force here because of the differences in fact and legal situations. The Rice case does not hold that parties to an insurance contract can never enter into a contract affecting that insurance merely because such later contract is prospective in its operation. If this rider is a valid contract in other respects, the fact that it was actually executed before the next renewal date is not material.

(3) *Conflict or Ambiguity in Policy.* While the matter of whether there was consideration given appellee for execution of this rider might properly be considered under this subheading, we prefer to deal with that issue separately under the next subheading of this opinion. We do this because of the particular importance of that issue. Our immediate concern is whether—aside from this issue of consideration—there are conflicts or ambiguities in the policy as to the right of the company to *refuse* renewals.

It is properly conceded that this is a term policy. The policy states: "The term of this policy * * * ends at 12 o'clock noon on date any renewal is due." Appellant bases its right to refuse to renew on any such date upon another provision of the policy. This is a portion of paragraph "(c)" which reads: *"The acceptance of any premium on this policy shall be optional with the Association,* and should the premium provided herein be insufficient to meet the requirements of this policy, the Association may call for the difference as required." (Emphasis added.)

Appellee contends that the portion of clause "(c)" (quoted above) in and of itself gave no unrestricted right to refuse renewal premiums and end the policy. She states two reasons for this position. The first is that the entire sentence is indivisible and leaves no unrestricted right to refuse renewals. The sentence provides for two distinct matters relating to payment of premiums. The first matter is the option to accept premiums. The second is the right to require such additional payment of premium as may "meet the requirements of this policy." The two matters are entirely consistent and neither nullifies or qualifies the other. Inclusion of both in the same sentence has no effect upon the meaning of either. This is held directly by this Court in construing this identical sentence. Mutual Benefit Health & Accident Ass'n v. Lyon, 8 Cir., 95 F.2d 528, 533, reversed on other grounds 305 U.S. 484, 59 S. Ct. 297, 83 L.Ed. 303. Also see Davis v. Mutual Benefit Health & Accident Ass'n, 168 Okl. 514, 34 P.2d 579, and Smith v. Mutual Benefit Health & Accident Ass'n, D.C.W.D.Okl., 10 F.Supp. 110, enforcing an identical clause in a policy of this appellant.

The second reason stated by appellee is that appellant has itself construed the clause as contended by appellee by changing it in policies later issued by it. We do not state that a change in an insurance policy cannot have significance in construing the meaning of the older form— that depends upon the situation in a particular instance. We do say it has no bearing here where the old form is clear in meaning.

In addition to the above contentions directed at construction of the language of clause "(c)", appellee urges that other provisions of the policy are contradictory to clause "(c)" or, at least, are so inconsistent therewith as to make the meaning of "(c)" ambiguous and, therefore, to be construed in favor of insured. If such contradiction or ambiguity exists, the position of appellee is well taken. State ex rel.

Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 267 S.W. 379; Mathews v. Modern Woodmen of America, 236 Mo. 326, 342, 139 S.W. 151, 155.

The provisions in the policy so regarded as contradictory or confusing are stated in the brief as follows:

"(1) the ⅜ inch type caption across the top of the face of the policy as follows: Ten Year Annual Increasing Policy.

"(2) Paragraph 1 of Part B on the face of the policy, which provides that the death benefit shall be increased $400.00 per year for 10 years and shall total $8,000.00 thereafter, without indicating any restriction on said increase or in any way indicating that defendant had the right to refuse to accept any tendered quarterly premium.

"(3) Paragraph 2 of Part B on the face of the policy which is captioned '$8,000.00 Twenty Year Privilege' which clearly indicates the privilege of the *insured* to continue the policy in force.

"(4) The first paragraph of Provision C of the additional provisions, which provides that the advance payment of premiums 'is required to keep this policy in *continuous* effect'.

"(5) The non-cancellable endorsement issued with the policy."

■ The matter of prominence of the caption "Ten Year Annual Increasing Policy" is, at most, merely of cumulative force if any or all of the four matters are sufficient to establish the ambiguity of clause "(c)". This Court has decided expressly

that the privileges under "Part B" of the policy are not inconsistent with clause "(c)" and we follow that determination. Mutual Benefit Health & Accident Ass'n v. Lyon, 8 Cir., 95 F.2d 528, 532.[4]

The matters of keeping the policy "in continuous effect" and of the noncancellable endorsement are disposed of (adversely to appellee) by Ray v. Mutual Benefit Health & Accident Ass'n, Mo.App., 220 S.W.2d 622. In the Ray case the appellant here had *refused to accept* a renewal premium. There the Court (p. 624 of 220 S.W. 2d) stated: "Under the issues in the case *it is not* necessary *to pass on the legal* effect of this Non-Cancellable clause because there is no question of cancellation of the policy. The only question or issue involved is the right of the company to refuse to renew appellant's policy on the date the premium was due." The Court quoted the entire clause "(c)"[5] in that policy and held: "We hold that the provision complained of in the contract here is clear in meaning, is a part of the contract the parties entered into, is unambiguous and is a valid and enforceable clause."

Appellee seeks to distinguish the Ray and Lyon cases from this case. As to the Ray case, one argument is that the language of "(c)" was different, in that, the provisions as to optional renewal and as to insufficiency of premium were in separate sentences instead of being included in one sentence, as here, thus manifesting an admission by appellant that the inclusion of both in one sentence was an ambiguity which needed clarification. We have here-

4. While this case was reversed on a different ground, the issue of the right of the company to refuse premiums and terminate the policy was expressly not considered, Lyon v. Mutual Benefit Health & Accident Ass'n, 305 U.S. 484, 486, 59 S.Ct. 297, 83 L.Ed. 303.

5. " '(c) The copy of the application endorsed hereon is hereby made a part of this contract and this policy is issued in consideration of the statements made by the Insured in the application and the payment in advance of $20.00 as first payment; and the payment in advance of premiums of $10.00 quarterly or $40.00 annually thereafter, beginning

with August 1st, 1932, is required to keep this policy in continuous effect. If any such dues be unpaid at the office of the Association in Omaha, Nebraska, this policy shall terminate on the date such payment is due. The acceptance of any premium on this policy shall be optional with the Association. The mailing of notice to the Insured at least fifteen days prior to the date they are due shall constitute legal notice of dues. Should the premium provided for herein be insufficient to meet the requirements of the Association, it may call for the difference as required.' "

inbefore determined that no such ambiguity exists in this sentence and that this change in policy is no proof of such ambiguity.

Appellee presents a similar argument in connection with the Lyon case by stating that, had this Court known of this change in language at the time of the Lyon decision, our decision that the acceptance of any premium was "unequivocal (notwithstanding other provisions found in the same clause)" (p. 532 of 95 F.2d) would have been otherwise. There is no basis for such conclusion.

As to both the Ray and Lyon cases, appellee urges a distinction from this case in that the renewal was rejected outright whereas here the renewal premium was accepted. Appellee states "that defendant's purpose *was not to terminate this policy* as in the *Ray case supra, but was to induce plaintiff to continue his policy in effect* and pay the defendant the *same premium for a lesser coverage.*" The "purpose" of the company is neither determinative nor material on its legal right. Whether this difference is material as bearing upon the contention of lack of legal consideration will be examined hereinafter in connection with the issue of consideration, next following.

(4) *Consideration for Rider.* What has been heretofore stated in this opinion disposes of all issues advanced by the parties in respect to this rider, except that of whether there was legal consideration from the company to the insured for the rider. The view of the trial court was expressed both in the charge to the jury and in a memorandum on motions after judgment.

In the charge, the Court stated: "Now, it is my viewpoint when the Company obtained a reduction in the benefit promised him without reducing his premium, they gave him no benefit whatever. He paid the identical premium from that time forward but with reduced benefits." In the memorandum, [90 F.Supp. 756] the statement was as follows:

"It was the view at the trial of the case and is now the view that so long as the premiums were paid, the defendant had no right, without consideration, to limit the benefits in the light of the clear promise to increase such benefits for persistency in premium payments.

"The Kansas City Court of Appeals, in the case of Rice v. Provident Life & Accident Ins. Co., 231 Mo.App. 560, 102 S.W.2d 147, loc. cit. 150, held that whereas the insurance carrier in that case would have the right to terminate the policy by reason of refusal to accept the premium for such renewal, yet, said the court:

"'It does not necessarily follow * * * that, because the defendant might at any time have canceled the policy and put it to an end, it therefore had the right, under the terms of the policy, to demand an increased premium of the plaintiff in order that it be not canceled but kept in force. * * * It had the right at the expiration of any thirty-day period to refuse to accept the regular monthly premium stated therein and to put the policy to an end; *but it had no right under the terms of the policy to demand an increased premium in order that it might be continued.'* (Emphasis mine)

"A fortiori, the defendant could not limit its liability without at the same time reducing the premium charge. Whatever the the facts in the Rice case, supra, *the principle announced is a good one.*" (Emphasis added.)

The memorandum adverts also to Mutual Benefit Health & Accident Ass'n v. Lyon, supra, stating:

"* * * The only point involved in that case was whether the premium payment had been made so as to keep the policy in force at the date of the assured's accidental death. * * * In the opinion by the Court of Appeals, and as an obiter dictum, the question of the right of the Association to terminate the policy in view of the increasing benefits vouchsafed was discussed, and it was held that these provisions would not debar the company the right to refuse to accept the renewal premium and thus terminate the policy.

"The right is a technical one and defeats important and valuable rights conspicuously vouchsafed to the assured on the front page of the policy. It is said that 'a techni-

cality has been well defined as a microbe which has gotten into the law and gives justice the blind staggers.' Such is the legal effect of this provision appearing on the back page of the policy. No contention is made here contrary to the holding of the Court of Appeals in the Lyon case, supra, although, as stated, that case was reversed outright." [90 F.Supp. at page 756.]

As to the Lyon case, we cannot agree with this construction put upon that opinion that the indicated statements therein were *obiter dicta.* That opinion [95 F.2d at page 532] states the issues presented upon that appeal to be: "(1) That the insurance involved was term insurance only for the term for which premium was paid in advance; that acceptance of any premium was optional with the association and it exercised its option and rejected the premium tendered after July 1, 1934. And (2) that there was no competent or substantial evidence to sustain plaintiff's allegation that the insured had paid all premiums and kept the policy in force and effect at the time of death."

This Court proceeded then to discuss and determine each of those two issues. A majority of the Court held both issues in favor of appellant and reversed and remanded the case. On certiorari, the Supreme Court stated [305 U.S. at page 486, 59 S.Ct. at page 298]: "In the view we take of the case, it is unnecessary to consider plaintiff's contention that the Court of Appeals erred in holding that defendant had the option to cancel the policy upon the due date of any quarterly premium. We find that there was competent and substantial evidence to sustain plaintiff's allegation that insured had paid premiums sufficient to keep the policy in effect up to and including the date of insured's death."

█ This reversal by the Supreme Court did not nullify the determination by this Court of the other issue. Nor was the determination of that issue by this Court *obiter dictum,* because "where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum"* Woods v. Interstate Realty Co., 337 U.S.

535, 537, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524; and "It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter." Union Pacific Railroad Co. v. Mason City & Ft. Dodge Railroad Co., 199 U.S. 160, 166, 26 S.Ct. 19, 20, 50 L.Ed. 134. To the same effect are: Riss & Co. v. Wallace, 239 Mo.App. 979, 988, 195 S.W.2d 881, 885; In re City of Berkeley, Mo.App., 155 S.W.2d 138, 140, and In re Moody's Estate (Lee v. Grace), 229 Mo.App. 625, 626, 83 S.W.2d 141, 142.

█ Whatever may have been the determination of this Court in the Lyon case, it is the duty of this Court to follow the law of Missouri since this is a Missouri contract. Appellee urges that the Rice case is controlling authority here and that it determined there was no consideration for a rider such as this. Hereinbefore, we have considered the Rice case in connection with other issues here but not as to this matter of lack of consideration.

The hereinbefore quotation from the Rice case in the memorandum of the trial court, standing alone, lends color to the contention of Appellee that the opinion in that case is an authoritative decision here. However properly to evaluate the quoted statement, we must examine further the text of that opinion in connection with the issues and facts there presented and determined because "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision." Osaka Shosen Kaisha Line v. U. S., 300 U.S. 98, 103, 57 S.Ct. 356, 358, 81 L. Ed. 532; and "should be confined to, and limited by, the facts of the case under consideration when the expressions relied upon were made, and should not be extended to cases where the facts are essentially different." Morse v. Consolidated Under-

writers, 349 Mo. 785, 789, 163 S.W.2d 586, 587. Also see Dred Scott v. Sandford, 19 How. 393, 442, 15 L.Ed. 691.

The basic issue in the Rice case was whether a rider to that policy eliminating certain ailments from the policy coverage was binding upon the parties. The Court held it was not because of lack of consideration therefor from the company. The fact situation was as follows. Insured had paid monthly premiums up to August 1, 1932. On July 20, 1932, insured received payment for and executed a release for an attack of rheumatism. Immediately after this release, an agent of the company required and insured signed a rider, "effective July 20, 1932", which excluded future liability from rheumatism. For some months thereafter, the monthly renewal premiums were paid and accepted until insured suffered another attack of rheumatism. The company refused payment therefor, relying upon the rider.

The here pertinent issues presented there were as follows:[6] No legal consideration for the rider and estoppel of insured to raise the issue of lack of consideration. The determination of those issues was as follows.

The Court did not rule expressly on the issue of estoppel but that issue was really disposed of through the manner in which the Court discussed and determined the issue as to consideration for the rider. The views of the Court were as follows: the rider recited the consideration therefor to be "in lieu of an increase in the premium"; the policy reserved no right to increase the premium; to the contrary, the policy provided for continuance from month to month on the same stated premium provided only that the company would accept the same; because the company might, at any time, *cancel* the policy, it did not follow, under the terms of the policy, that it could demand an increase of the stipulated premium to prevent cancellation when the policy provided it might be continued monthly provided only that the company would accept such premium; there was no warrant in the policy to demand an increase in premium in lieu of cancellation of the policy; since the policy gave no right to demand such increase, there was no consideration for the rider. Immediately following and in connection with the matters just recited, the Court [102 S.W.2d at page 150] stated: "It had the right at the expiration of any thirty-day period to refuse to accept the regular monthly premium stated therein and to put the policy to an end; but it had no right under the terms of the policy to demand an increased premium in order that it might be continued."

Later the Court disposed of the contention that consideration was present because of a detriment to the company by the agreement in the rider which had the effect of preventing exercise of the right to cancel the policy. The Court stated that there was no detriment since the same right of cancellation existed after execution of the rider as before.

As to the further contention of the company that monthly renewals of the policy after August 1, 1932 amounted to new contracts which included the rider, the Court, conceding that each renewal was a new contract, said "it is nevertheless a contract with the same terms and conditions as those contained in the policy which is renewed", 102 S.W.2d at page 151; however, the validity of the new contract must be determined "in the light of the situation existing at the hour of its making", 102 S.W.2d at page 151. Applying this rule, the Court stated [102 S.W.2d at page 151]: "the rider in question was *at the time that it was executed* void for the reason that no consideration *at such time* existed therefor; and, being inconsistent with and repugnant to the provisions of the original policy, it cannot stand [emphasis added]. The original policy as continued from month to month or as renewed from month to month was unaffected by such rider."

From the foregoing analysis of the Rice opinion we conclude that the Court decided that refraining from increasing the premium for the same coverage in lieu of *cancellation* of the policy was not a legal consideration for the rider reducing the cover-

6. Other issues not related to our present investigation are omitted.

age at the same premiums, at a time when the company had a right to cancel the policy, because the policy provided a stated premium for the coverage therein set forth. It was in connection with such holding that the sentence here involved and quoted hereinbefore was used. The effect of that language is that the Court thought the same result would follow where a like rider was executed in connection with a renewal at a premium paying date.

■ . Although this language applies to the situation now before us, it was an *obiter dictum* when used in the Rice case. The issue in the Rice case was one of the rights of the company as to cancellation and not as to renewal. This language was not necessary to a determination of the issue of consideration *vel non* under the fact situation there. Indeed, the effect of a renewal of the policy was discussed and determined upon an entirely different ground, to wit, the invalidity of the rider *at the time it was executed and was expressed to be effective,* which was before the renewal date. "In applying cases which have been decided, what may have been said in the opinion should be confined to, and limited by, the facts of the case under consideration when the expressions relied upon were made, and should not be extended to cases where the facts are essentially different." Morse v. Consolidated Underwriters, 349 Mo. 785, 789, 163 S.W.2d 586, 587. "The language of decisions should not receive wider application than the issues involved." Willott v. Willott, 333 Mo. 896, 899, 62 S.W.2d 1084, 1085, 89 A.L.R. 114. See also, State v. Murphy, 341 Mo. 1229, 1238, 111 S.W. 2d 132, 137, certiorari denied 320 U.S. 789, 64 S.Ct. 200, 88 L.Ed. 475; State v. Public Service Comm., 330 Mo. 729, 734, 51 S.W. 2d 73, 75, certiorari denied Chicago G. W. R. Co., v. Public Service Comm., 287 U.S. 641, 53 S.Ct. 89, 77 L.Ed. 555, and Aetna Life Insurance Co. v. Daniel, 328 Mo. 876, 883, 42 S.W.2d 584. It is clear that the facts and the issues governing the rights of cancellation and the rights in connection with renewals of insurance policies are, in their nature, different. That is true both as to the Rice case and as to this case. The circumstance that the Court stated that it would reach the same result and for the same reasons in a renewal situation as it did reach in a cancellation before, it does not prevent such expression from being *obiter dictum* as to the renewal matter.

■ However, determination that this language in the Rice case is *obiter dictum,* under the different issues and fact situations from those before us, does not end this matter. It is the duty of United States Courts to apply the law of a State in matters involving State law and the construction and effect of contracts—including insurance policies—are subject to the rule.

■ In determining what the State law is there are several criteria. Of course, if there be an applicable State statute or decision, such must govern the United States Courts. If there be no such statute or decision, other aids must be sought. The problem then becomes one of an informed prophecy as to what the State Courts would probably decide were the issue before them. *Obiter dicta* in State Court opinions are not authoritative decisions and not binding on Federal Courts. De Long v. Jefferson Standard Life, Ins. Co., 5 Cir., 109 F.2d 585, certiorari denied 310 U.S. 635, 60 S.Ct. 1081, 84 L.Ed. 1405. However, this does not mean that such expressions are necessarily valueless—"they may be respected" Osaka Shosen Kaisha Line v. U. S., 300 U. S. 98, 103, 57 S.Ct. 356, 358. They may be suggestive of what the State Courts would probably hold in deciding the issue before the Federal Court.

■ Also, the considered views of a District Judge as to the law of his State will be accepted as to doubtful questions of local law, National Bellas Hess, Inc., v. Kalis, this Court, 191 F.2d 739; Buder v. Becker, this Court, 185 F.2d 311, 315; Western Casualty & Surety Co. v. Coleman, this Court, 186 F.2d 40, 43. With such suggestive support as may be gained from the *dictum* in the Rice case but particularly in view of the careful consideration given by the trial court here, we cannot say that he has not reached "a permissible conclusion". Coleman case, supra, 186 F.2d at page 43. While the Rice case is not authoritatively controlling, because of differences in issues and facts, yet the reasoning and language

242

used therein point strongly to the conclusion that had the issue before us been there involved, the result would have been against the company. We do not intimate what our view might be if we were not bound to follow the State law as nearly as we can predict it from the material at hand. We take merely the judicial venture which seems to us as most probably anticipating what the State Courts would determine as to the State law.

 Appellant urges that the Ray case, supra, governs this case. The Ray case decided that the option to refuse renewals was unambiguous and valid. We so hold here. However, this is not opposed to our conclusion just stated. The difference is between a right to refuse renewal outright, as in that case, and a right to refuse renewal upon condition of a decrease in liability for the policy stated amount of premium. In effect, such change in liability with continuance of the old premium rate is the same as a higher rate upon the smaller coverage.

What has been just stated as to the Ray case applies to the Lyon case with the additional considerations that the contract there was in Arkansas and that the law of Arkansas was not mentioned in the opinion.

Confinement and Medical Attendance.

Appellant contends that, even if the rider be found invalid, insured did not suffer the character or degree of illness covered by the policy. The policy provides payment for disability resulting from disease. In so far as here material, there are three pertinent provisions which, with emphasis added, are as follows.

"Illness Indemnities.

"PART H. CONFINING ILLNESS TWO HUNDRED DOLLARS PER MONTH FOR LIFE

"The Association will pay, for one day or more, at the rate of Two Hundred ($200.00) Dollars per month for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and *which confines the Insured continuously within doors and requires regular visits therein by legally qualified physician;* provided said disease necessitates total disability and total loss of time.

"PART I. NON-CONFINING ILLNESS ONE DOLLARS PER MONTH

"The Association will pay, for one day or more, at the rate of One Hundred ($100.00) Dollars per month, but not exceeding one month, for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and *which does not confine the Insured continuously within doors, but requires regular medical attention;* provided said disease necessitates total disability and total loss of time."

"Additional Provisions

"(a) This policy does not cover death, disability, or other loss sustained in any part of the world except the United States and Canada, or while engaged in military or naval service, *or while the Insured is not continuously under the professional care and regular attendance, at least once a week,* beginning with the first treatment, *of a licensed physician or surgeon,* other than himself; * * *".

These actions are under "Part H" of the policy for $200.00 monthly. Appellant contends that this illness of insured was not one "which confines the Insured continuously within doors" nor one where he was continuously under the professional care and regular attendance at least once a week of a licensed physician.

The Court submitted these matters to the jury under instructions wherein he defined these expressions in the policy. Appellant challenges these definitions in the charge and, also, contends that the evidence showed conclusively that insured had neither been confined continuously within doors nor received the medical attendance required—therefore, its motion for directed verdict should have been given. Since each of these contentions depends upon the evidence, we will state the evidence, viewing it in the light most favorable to the appellee.

*Continuous Confinement.* The present illness began in April, 1947. The illness was diagnosed as Parkinsons Disease. Such disease is incurable and becomes progressively worse. One of its effects is the increasing loss of muscular control. He has transacted no business. He required help in dressing and eating. He could shuffle from chair to chair until the later stages of the illness. Because of uncertainty and difficulty in walking, some member of the family steadied and supported him. From a few months after April, 1947, up to two or three months before the trial (March, 1950), he took short walks on the sidewalk. These were for a third to a half block and back. He was always accompanied and helped by his wife. It would take him about twenty minutes to go half a block. He took these walks two or three times a week when the weather was good and his condition permitted.[7] In good weather, his wife would take him out to sit on the porch for a short while until his position became painful. Occasionally, after June, 1948, his son would take him for an automobile ride. With great difficulty, he was helped in and out of the automobile. These outings were under instructions from the doctors "to prevent an excessive stiffening of joints and of his muscles."

*Attendance of Physician.* From the beginning of this illness until June, 1948, insured was attended successively by two doctors Myers until Doctor Eugene Myers turned the case over to Doctor Kealhofer because Myers was leaving the city. Up to the advent of Doctor Kealhofer, the attendance of the doctors Myers is somewhat uncertain.[8] Doctor Kealhofer saw insured weekly "for some several months" and, thereafter on an average of about every two weeks. The rest of the time, insured's

son would report the condition of insured to Doctor Kealhofer at his office.

*The Charge of the Court.* Regarding "confinement", the gist of the charge is as follows.

"* * * He [the doctor] said, in having his wife take him out on the sidewalk, out on the porch, that was part of the treatment; that that would have the effect to deter the inroads of the disease and would make it not so rapid in its progress and that, for that reason he directed he get outside.

"Now then, I think it is my duty to tell you if he went on the outside and rode in an automobile, and if he did that, and you find from the evidence he did that, as a part of the treatment and that otherwise it would have been necessary for him to have remained in the house by reason of the confining illness and he was totally disabled, then within the purview of the law, as I interpret the law, he was disabled within the meaning of the policy."

As to "attendance of physician", the Court charged as follows.

"Now, I mentioned somewhat of what the doctor said. The doctor said, he is the one told you that he instructed the man to go out. There is another question here, that under the terms of the policy, he should be visited by a physician probably once a week. You remember what was said here. And that was according to the terms of the policy. Counsel, you recollect, quoted the terms of the policy to you. You heard what was said by the doctor, how often he went there, and the fact he didn't go and the fact in this evidence for some one to report to the physician his progress was all that was necessary, and that he only treated the symptoms; that it was a disease that was

---

7. Appellant introduced pictures showing insured and his wife standing on the sidewalk. These were taken by a neighbor about three months before the trial.

8. The entire evidence (from Mrs. Cohen) is as follows.
"Q. Since 1947 how often has the doctor, whether one or more than one, how often have doctors been to see Mr. Cohen? A. Sometimes if sick, some-

times once a week, two times a week, sometimes ten days, sometimes 11 days, sometimes every week.
"Q. Sometimes once or more? A. No. Sooner than that all the time.
"Q. Now, beginning in the summer of 1947 do you think the doctor has been to see Mr. Cohen every week?
"A. Sometimes twice a week because he was awfully sick."

uncurable, as I gathered from his testimony, and he only treated symptoms.

"Now then, the question in your mind should be: Was it necessary for the doctor, when he found he could not do him any good as far as the disease was concerned, that it was a progressive disease, was it necessary for him to be there every day, not every day but once a week? Under the terms of the policy, it provides he could not recover unless he was visited once a week. Now, the object of all that was to see whether the claimant was really ill, really confined and wasn't malingering. Now, under the evidence, as I gathered, the doctor required reports to be made to him by a son. My interpretation of the policy is such that because of the disease, the doctor visited him or had reports made to him within the terms of the policy. That is, you may find it is within the terms of the policy. I am leaving it to your judgment to say whether or not those are the facts but— and I will tell you as a matter of law that the doctor did not visit him but that he had regular reports made, and in his diagnosis of the case found it was unnecessary for him to go, that the report from the son was sufficient—I tell you that, as a matter of law, your sole inquiry is to determine whether or not he was totally and permanently disabled."

Concisely stated, the charge directed the jury that if the sitting on the porch, the walks and the automobile rides were parts of the treatment prescribed by the doctors and that otherwise he would have been confined to the house, then the policy requirement as to confinement "continuously within doors" would be met; and that if the doctors found it unnecessary to visit insured weekly but received regular reports as to his condition, then the policy requirements that he should be "visited therein" (the house) and should be "continuously under professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon" would be met.

*The Applicable Law as to Continuous Confinement.* This case is ruled directly by Lachterman v. Mutual Benefit Health & Accident Ass'n, Mo.App., 60 S.W.2d 646, '647. That case construed the identical provision ("Part H")[9] in a policy issued by the appellant here, as well as "Part I" hereof. Lachterman had recovered $625.00 for several months illness disability, under our "Part H" alone. The judgment was remanded with directions to enter judgment for $225.00, being recovery of $100.00 for one month under our "Part H", $50.00 for one month under our "Part I" and $75.00 for hospital expenses (under another provision of the policy). The sole question was the application of those two "Parts" to the facts. The agreed facts were that during one month, Lachterman was confined continuously within doors, while the rest of the time he was not so confined, being frequently taken by automobile to the office of his doctor, taking an occasional walk around the block and being taken by automobile two or three times to his place of business "to find out how his business was being conducted, but performed no duties about his own business or * * * any kind of work". The Court in 60 S.W.2d at page 647 stated: "While provisions of 'Part I' and 'Part J' both deal with total disability resulting from disease which necessitates total disability and total loss of time, 'Part I,' in addition thereto, requires that the disability must confine the insured continuously within doors, whereas 'Part J' provides specifically for those cases wherein the disability 'does not confine the Insured continuously within doors'. Provision 'Part J' clearly distinguishes that, for disability to the insured resulting from disease which necessitates total disability and total loss of time, and which requires regular medical attention, but which disability does not confine the insured continuously within doors, the insurer will only pay the insured at the rate of $50 per month, and not to exceed one month; and provision 'Part I' points out that, to entitle the insured to the payment of $100 per month, the disability resulting from the disease must not only result in total disability and total loss of time, but the disability, in addition thereto,

9. In the Lachterman case our "Part II" was there "Part I" and ourt "Part I" was "Part J".

must be such as to 'confine the insured continuously within doors and must require regular visits thereby [therein] by legally qualified physician.' "

The situation, in our case, that insured left his house for walks and automobile rides and to sit on the porch, only under direction of his physician and as part of his treatment cannot affect the meaning and the application of the policy provision ("Part H") that, to recover thereunder, his illness must be one "which confines the Insured continuously within doors". The charge of the Court in this respect was erroneous.

Appellee relies upon Musser v. Great Northern Life Insurance Co., 218 Mo.App. 640, 266 S.W. 325, as opposed to the Lachterman case and as governing this case. We do not here analyze the Musser opinion, although it has been examined. Each of these cases is a decision of a Court of Appeals of the State of Missouri. We hold the Lachterman case applicable here. Even if the Musser case has ruled the same issue contrary to the Lachterman case—which we do not determine—the two decisions are by Courts of the same grade in the Missouri judicial system. We should follow the Lachterman case as being the latest decision.

*The Applicable Law as to Attendance of Physician.* As to attendance of physician, this case is ruled directly by State ex rel. Mutual Benefit Health & Accident Ass'n v. Trimble, 334 Mo. 920, 68 S.W.2d 685, reaffirmed in State ex rel. Mutual Benefit Health & Accident Ass'n v. Shain, 338 Mo. 340, 89 S.W.2d 661. Those opinions considered and determined the construction of the identical policy provisions ("Part H", "Part I" and "Additional Provisions" (a) ) here in issue. As expressed in 68 S.W.2d at page 688, the Supreme Court of Missouri stated the law to be "The policy in express terms provides that the insured must have actually been visited by a physician before he is entitled to any benefits." See State ex rel. Commonwealth Casualty Co. v. Cox, 322 Mo. 38, 14 S.W. 2d 600, 602. These provisions in the policy are clear, unambiguous and must be followed in fitting them to the facts of a particular case. They leave no discretion in the insured or in his attending physician as to whether weekly visits are necessary. Compliance with them is a prerequisite to recovery. Therefore, these portions of the charge were erroneous.

## Conclusion.

This suit was upon the policy for sick benefits. The situation that appellee has sought recovery under "Part H" and "Additional Provisions" (a) of the policy and is not entitled to recover the entire sum sued for would not justify our ruling that the motion for directed verdict should have been sustained. The situation here is quite like that in the Lachterman case. There plaintiff sought and secured recovery in the trial court under a policy provision identical with "Part H" here; and there, on appeal, recovery was accorded for the same illness, partly under a policy provision idenical with our "Part H" and partly on one identical with our "Part I". Unlike the Court in the Lachterman case, we cannot direct what the recovery should be. In that case, there was an agreed statement of facts while here there was a jury trial on evidence. Here there was no issue of liability under our "Part I" and there was evidence which *possibly* might place a part of the liability under each of our provisions "Part H" and "Part I". This is a matter of fact for submission under proper instructions. The charge here was erroneous. The situation calls obviously for a retrial.

To secure such, under the guidance of this opinion, the judgment is

Reversed and remanded.