**RUBBER & TIRE MATERIALS CO. OF OHIO, Appellant,**

v.

**Woodford CONLEY d/b/a Mountain Tire Service & Mountain Service Co., Inc., Appellee.**

Court of Appeals of Kentucky.

Nov. 6, 1970.

Perry & Greene, Paintsville, for appellant.

Eugene C. Rice, S. Howes Johnson, Paintsville, for appellee.

OSBORNE, Judge.

The principal question presented to the court in this appeal is whether or not the buyer timely gave notice to the seller of a claimed breach of warranty.

This action began as a relatively simple law suit wherein the appellant, Rubber Tire & Materials Co. of Ohio, a rubber wholesaler, brought action against Woodford Conley, d/b/a Mountain Tire Service Co., Inc., to recover the arrears upon an account.

Appellant's proof established that in July, 1961, appellant forwarded to G. C. Perry, III, an attorney, an account against appellee in the amount of $7,769.17. Shortly thereafter, the attorney contacted the debtor and the debtor commenced to make payments on the account by paying small sums intermittently up to the date of July, 1967, at which time the account had been reduced to $3,018.17. Action was brought against Conley for this amount. In response to this action he filed his counterclaim in which he alleged, without giving any date, that the appellant shipped him 156 boxes of bad rubber, which could not be used. He alleged that he did attempt to

use this rubber and with it recapped "several tires" which after they were put on vehicles it immediately became known that the rubber was defective and as a result thereof he had many adjustments to make, which incurred considerable cost and loss of business. As the result of the above general allegation, appellee asked for damages in the following form:

1. Judgment against the appellant for the amount claimed in the petition ($3,018.17) due to being charged for bad rubber which the defendant could not use.

2. $1,000 for the cost of making adjustments on the tires that were recapped with bad rubber.

3. $3,000 for loss of business due to defective rubber.

The proof introduced by the appellant showed the account as heretofore stated. This is not disputed. The appellee then took the stand and testified concerning his counterclaim. His testimony, in substance, is as follows: That he received rubber that was bad from the appellant (no date given); that as a result of the bad rubber, tread came off of tires and the tires came out of the mold with rolled edges; that a salesman from the Company came to his place of business and examined the rubber and found that he had in stock either 146 or 156 boxes that were old and bad, and that the salesman said, "that they would definitely make it up for us." His testimony here is to the effect that the salesman did not say that they would give him credit for the bad rubber or replace it. His testimony is that the rubber was worth $22.50 a box and as a result of the failure of the Company to give him credit on his account at that time, he now should be given $3,312.00 as the value of the bad rubber.

Appellee testified that he used 70 boxes of bad rubber, therefore, it would appear that he should have had 76 boxes left unused. He states that after he used the bad rubber his work began to be returned by

the customers "real fast" and that he had to replace "many tires." He testified that the 70 boxes of bad rubber, which he used, would recap 420 tires, viz., six tires to the box. His attorney then asked him if there was any expense involved in replacing these tires or labor for recapping (the question assumes that all of the tires so recapped had to be replaced). The appellee answered, "Yes, sir, for the most of them, I would say 90% of them were replaced without any charge whatsoever." We do not know if he is speaking of 90% of what was returned or 90% of the full 420 tires.

Appellee was then asked by his attorney if he had any judgment on what the cost would be on the labor and materials for exchanges as a result of the bad rubber. His answer was, "Oh, about $6.50 per tire." He then testified that about 360 tires were returned to him and that adjustment on these tires were $6.50 for each tire, which would be $3,960.00. He testified that he lost some customers as a result of bad tires but that he got all of them back except for one customer, and that he felt that he was damaged in the amount of approximately $4,000.00 to $5,000.00 as the result of loss of business. He further testified that he had no definite figures as to the profit that he lost other than the estimates previously given. Then, upon cross-examination, when pressed upon this question he again estimated that he had lost $6,000.00 in profit. On cross-examination he testified that he was complaining about 100 boxes of bad rubber which he purchased in 1958 or 1959 and that he did not know the box numbers nor the invoice numbers nor anything else that would further identify the rubber; that he did not send any rubber back to the Company and that he continued to buy rubber from the same Company from that time until he ceased to do business in 1967 and paid them thousands of dollars for rubber purchased. And, over that entire period of time he "thought" they had given him credit for the bad rubber. When asked what he had done with the 70-odd boxes of rubber that he did not use, he said that "Some of it was still sitting over there and most of it had been thrown away." When asked about the business records to show how many tires were adjusted in any given period of time, he testified, "We keep invoices on that, that show all adjustments." (No invoices whatsoever were offered in evidence).

The appellant objected to the foregoing testimony on the grounds that it was too speculative to support a judgment. And no timely notice was given of the breach of warranty. It further objected to the instructions given by the court on the grounds that there was no evidence to support the instructions and made motion for a judgment notwithstanding the verdict on the grounds that the verdict was not supported by sufficient evidence. In addition it has objected to the verdict and the judgment on the grounds that the basis of the claim is barred by the statute of limitations.

We are of the opinion the judgment for $4,000.00 for damages for rubber discarded and tires adjusted will have to be reversed. This claim arises out of a breach of implied warranty of fitness. Under such warranty the buyer must give notice to the seller of any claimed breach within a reasonable time after the buyer knows or ought to know of such breach. See Annotation, Warranty—Breach, Time of Notice, 41 A.L.R.2d, 807 at page 845. When a buyer delays making a claim for a breach of warranty for an undue length of time and until the seller takes legal action to collect for the goods sold, his claim always becomes suspect for the simple reason that if he had a legitimate claim for the breach of warranty one would normally assume that he would have asserted it as soon as he learned of the breach. Here the buyer waited ten years after knowing of the breach to assert it. We are of the opinion this was an unreasonable delay. See Permalum Window & Awning Mfg. Co. v. Permalum Window Mfg. Corp., Ky., 412 S.W.2d 863. Therefore, the trial court should have sustained a motion for judgment notwith-

standing the verdict on the counterclaim. We are further of the opinion that this was a bulk transfer from Conley to Mountain Service Co., Inc., and the provisions of KRS 355.6–101, etc., should apply.

Judgment reversed for proceedings consistent with this opinion.

All concur.